[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-15008
_____

D.C. Docket No. 1:16-cv-23065-RNS

OLIVIER CARON,

Plaintiff – Appellant,

versus

NCL (BAHAMAS), LTD.,
A Bermuda Company
d.b.a. Norwegian Cruise Line,

Defendant – Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 13, 2018)

Before TJOFLAT, MARTIN, and JILL PRYOR, Circuit Judges.

TJOFLAT, Circuit Judge:

This case arises from a drunken tumble down an escape hatch on a cruise ship. Olivier Caron, a Canadian citizen, was injured while a passenger on the *Star*, a vessel owned and operated by NCL. On the second day of his Baltic cruise, Caron bought an all-inclusive package, which allowed him unlimited beer and wine while on the cruise, and proceeded to drink beer late into the night. After leaving the bar, instead of returning to his room, Caron entered an area that was clearly marked with signs reading "CREW ONLY" and "RESTRICTED, CREW ACCESS ONLY." Pressing on, Caron entered another door labeled "CAUTION Only authorized crew beyond this sign," and fell several feet through an emergency-exit hatch, causing injuries for which he now seeks to recover. He filed suit in the District Court, claiming the cruise line was negligent in allowing him to fall down the hatch and in over-serving alcohol to him, which led to his fall. The District Court dismissed the over-service claim and granted summary judgment for NCL on the other negligence claim. Plaintiff appeals both rulings. After careful consideration, we affirm.

## I.

This opinion is organized as follows. We discuss the facts and procedural history of the case in Part I, the subject-matter jurisdiction of the District Court in Part II, the dismissed over-service claim in Part III, and the other negligence claim in Part IV. Part V concludes.

2

A.

Olivier Caron spent the evening of July 15, 2015, drinking with his fellow passengers aboard the *Star*. He became intoxicated to the point that he felt "completely disoriented." At about 3:37 a.m. on July 16, Caron descended a mid-ship flight of stairs into a passenger-elevator area. But instead of continuing on to his room on the ship, Caron opened a clearly marked crew-only door and proceeded into a restricted area of the ship. He walked down a hallway, where he was seen by two crewmembers who tried to talk to him; he did not respond. While the crewmembers called security, Caron moved away from them, such that they did not see where he went. He opened and walked through another door with obvious crew-only markings, where he fell into a hole, hitting the deck below and suffering an injury to his foot. The hole was an escape hatch from the bow-thruster room below, and the hole would have been clearly visible once the door was opened. Caron fell down the hole approximately four minutes after entering the crew-only area. About four and a half hours later, Caron climbed out of the hatch and, with assistance, went to the ship's medical center, where his injuries were treated.

B.

On July 14, 2016, Caron filed suit against NCL in the Southern District of Florida, asserting jurisdiction on the basis of diversity of citizenship and admiralty

3

jurisdiction. *See* 28 U.S.C. § 1332(a)(2), §1333(1).[1] His complaint made no mention of being served alcohol, but he did allege several other theories of negligence. He claimed, among other things, that NCL had failed to maintain its walkways and manholes in a safe condition, to remedy a known dangerous condition, and to warn Caron of a danger that was not open or obvious. Caron demanded a jury trial, and one was scheduled. Although Caron alleged that admiralty jurisdiction was proper, he did not make a Rule 9(h) election for his claim to proceed in admiralty. Fed. R. Civ. P. 9(h).

On September 30, 2016, Caron amended his complaint, adding an allegation that NCL was negligent in over-serving alcohol to him. NCL moved to dismiss this claim under Federal Rule of Civil Procedure 12(b)(6) and strike the allegation of over-service on the basis of a limitations provision in Caron's ticket contract, which required any personal-injury suits against NCL to be brought within one year of the incident giving rise to the injury. The District Court granted the motion, finding that the over-service claim was contractually barred and did not relate back to the initial complaint.

On November 3, 2017, the District Court granted NCL's Motion for Summary Judgment on the remaining negligence theories. It found that Caron had

---

[1] The District Court accepted jurisdiction but did not indicate expressly whether its jurisdiction lay under § 1332(a) or § 1333. In accepting Caron's demand for a jury trial, the Court purported to assume jurisdiction under § 1332(a) and not § 1333.

4

not met his burden of production, as he had failed to produce evidence of the dangerousness of the escape hatch, of NCL's knowledge of such dangerousness, or of the unreasonableness of the crew's behavior in letting Caron escape further into the restricted area. This appeal followed.

## II.

Whether subject matter jurisdiction exists is an issue of law that we review *de novo*. *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1340 (11th Cir. 2011). The party seeking federal jurisdiction must prove, by a preponderance of the evidence, facts supporting the exercise of jurisdiction. *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002).

## A.

The parties disagree as to whether the District Court had subject-matter jurisdiction. Caron contends that the alienage-diversity provision, which governs suits between aliens and citizens of a State, applies, and that the District Court thus entertained jurisdiction under this provision. *See* 28 U.S.C. § 1332(a)(2). Since Caron is a Canadian citizen and NCL is a Bermuda corporation with its principal place of business in Florida, Caron argues that NCL should be deemed a Florida citizen for diversity purposes. And even if alienage-diversity jurisdiction fails, Caron argues, as a fallback, that he sufficiently invoked the court's admiralty jurisdiction under 28 U.S.C. § 1333.

5

NCL contends that Caron failed to adequately plead NCL's citizenship to invoke alienage-diversity jurisdiction, since he did not allege NCL's Bermuda citizenship or move to amend his complaint to do so. It also denies that admiralty jurisdiction is available, since Caron did not elect to proceed under admiralty per Federal Rule of Civil Procedure 9(h).

Alienage diversity, like general diversity under 28 U.S.C. § 1332(a)(1), must be complete; an alien on both sides of a dispute will defeat jurisdiction. *Lama*, 633 F.3d at 1340; *cf. Strawbridge v. Curtiss*, 3 Cranch 267 (1806) (requiring complete diversity under the predecessor statute to § 1332(a)(1)). This Court has never explicitly decided whether dual-citizen corporations, incorporated under the laws of a foreign state but with their principal place of business in a U.S. state, count as aliens in order to defeat complete diversity in suits against other aliens. Every other circuit court of appeals to consider the issue has concluded that alienage diversity is lacking in these cases, defeating subject-matter jurisdiction. *See*, *e.g.*, *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537-38 (5th Cir. 2014); *Slavchev v. Royal Caribbean Cruises, Ltd.*, 559 F.3d 251, 254-55 (4th Cir. 2009); *Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co.*, 509 F.3d 271, 272-73 (6th Cir.

6

2007); *Creaciones Con Idea, S.A. de C. V. v. Mashreqbank PSC*, 232 F.3d 79, 82 (2d Cir. 2000).[2]

The 2012 amendments to § 1332(c) bolster the rationale of these decisions. Section 1332(c) governs the citizenship of corporations for purposes of diversity jurisdiction. Previous versions of the statute referred only to corporations incorporated in, or with their principal place of business in, a "State." 28 U.S.C. § 1332(c) (2006); *see also Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1557 (11th Cir. 1989) (interpreting a prior version of § 1332). Before the recent amendments, the circuits were split on whether foreign states were "State[s]" within the meaning of the statute. *Compare Cabalceta,* 883 F.2d at 1557 *with Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.,* 20 F.3d 987, 990 (9th Cir. 1994).

In contrast, the 2012 amendments to § 1332(c) explicitly impute to corporations citizenship in every State or foreign state where the company is incorporated and in the State or foreign state where the company has its worldwide principal place of business. § 1332(c)(1) (2012). So a corporation incorporated in a

---

[2] A panel of this Court has suggested, in a footnote, that alienage-diversity jurisdiction was proper in a seemingly indistinguishable case. *Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1235 n.1 (11th Cir. 2012). We decline to follow *Myhra*, as it has been superseded by statute. The district court case reviewed in *Myhra* was originally filed before the 2012 amendments to § 1332, which clarified the citizenship of foreign corporations. *Myhra* gave no effect to the foreign incorporation of the defendant corporation, treating it as only a citizen of a state based on its principal place of business. This interpretation is clearly unavailable under the current text of the statute. *See* § 1332(c) (2012).

7

foreign state is specifically deemed a citizen of that foreign state when evaluating jurisdiction.

We therefore hold that § 1332(a)(2) does not grant jurisdiction over a suit between a corporation incorporated solely in a foreign state and another alien, regardless of the corporation's principal place of business.[3]

Here, Caron is a Canadian citizen, and NCL is a Bermuda company with its principal place of business in Florida. Since both Caron and NCL are aliens, § 1332(a)(2) does not support the exercise of jurisdiction in this case.

### B.

But all is not lost. Although alienage-diversity jurisdiction is lacking, the District Court validly exercised admiralty jurisdiction over the case pursuant to 28 U.S.C. § 1333(1).

Tort claims are within admiralty jurisdiction if 1) the incident occurred on navigable water, or the injury was caused by a vessel on navigable water, and 2) the incident is connected with maritime activity. *Broughton v. Fla. Int'l Underwriters, Inc.*, 139 F.3d 861, 865 (11th Cir. 1998). An incident is connected with maritime activity if, on an assessment of the general features of the type of

---

[3] We are not required to decide, and do not decide, whether a corporation incorporated in a State, but with its worldwide principal place of business abroad, can invoke alienage-diversity jurisdiction in a suit against an alien. This court held in *Cabalceta* that alienage-diversity jurisdiction was proper in that circumstance. 883 F.2d at 1557. Whether the 2012 amendments to § 1332 overruled *Cabalceta* is a question for another day.

8

incident involved, it has "a potentially disruptive impact on maritime commerce," and "the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S. Ct. 1043, 1048 (1995). Personal-injury claims by cruise ship passengers, complaining of injuries suffered at sea, are within the admiralty jurisdiction of the district courts. *See*, *e.g.*, *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587-88, 111 S. Ct. 1522, 1524 (1991) (exercising admiralty jurisdiction in a case alleging personal injury suffered aboard a cruise ship at sea).

In this tort case, Caron seeks to recover for a personal injury he suffered at sea. Furthermore, Caron alleged that admiralty jurisdiction was proper from the inception of the case and met his burden to prove facts showing a maritime nexus to his injury. The District Court therefore validly exercised jurisdiction over the case.[4]

That the District Court mistakenly believed it had jurisdiction under § 1332 is troubling, but its lack of awareness does not invalidate the proceedings below. Before the union of law and admiralty under the 1966 revisions to the Federal

---

[4] Since admiralty was the only proper source of jurisdiction, Caron was not required to elect it under Federal Rule of Civil Procedure 9(h). This election is not required for the exercise of admiralty jurisdiction unless " a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground . . . . A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim . . . whether or not so designated." Fed. R. Civ. P. 9(h)(1).

Rules of Civil Procedure, such a mistake would have required vacatur and remand with an instruction for the district court to decide whether transferring the case to its admiralty docket would be appropriate. *See Poole v. Lykes Bros. Steamship Co.*, 273 F.2d 423, 424 (5th Cir. 1960); 1 Thomas L. Schoenbaum & Jessica L. McClellan, *Admiralty & Maritime Law* § 3-2 (5th ed. 2011) (describing the 1966 union of law and admiralty). Nowadays, procedure in law and admiralty is much more similar, with only a few admiralty-specific rules remaining. *See* Fed. R. Civ. P. 9(h), 14(c), 38(e), 82 (special rules for admiralty claims); Supp. Adm. & Mar. Cl. R. (same). These rules do not generally require admiralty litigation to be conducted differently from other litigation in the district courts; rather, the admiralty rules mostly add strategy options for plaintiffs. Vacatur and remand are thus unnecessary.

The most salient difference that proceeding in admiralty creates is the absence of a right to a jury trial. Fed. R. Civ. P. 38(e); *St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.*, 561 F.3d 1181, 1187 (11th Cir. 2009) (setting out the "general rule that admiralty claims are to be tried without a jury"). Here, Caron made a jury demand, which would have been proper had the District Court had alienage-diversity jurisdiction, and the case had been scheduled for a jury trial. But even this does not cast doubt on the propriety of the proceedings below, since no

10

jury trial occurred; every claim in the case was finally adjudicated at either the pleading or summary judgment stage.

In his complaint, Caron alleged sufficient facts to support the District Court's exercise of admiralty jurisdiction, and all of the proceedings below were appropriate in light of this jurisdictional basis. We thus conclude that the District Court had jurisdiction to hear the case, and its mistake as to its basis was harmless. Having so concluded, we now address the District Court's rulings on each of Caron's negligence theories.

## III.

Caron appeals the dismissal of his claim for negligent over-service of alcohol as contractually waived. We review the grant of a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss *de novo*. *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008).

### A.

Caron's ticket contract contained a one-year limitations period on bringing personal-injury suits:

> The Guest agrees that no suit, whether brought in rem or in personam, shall be maintained against the Carrier for emotional or physical injury, illness or death of Guest unless written notice of the claim, including a complete factual account of the basis of such claim, is delivered to the Carrier within 185 calendar days from the date of the incident giving rise to such injury, illness or death; and no suit shall be maintainable unless commenced within one (1) year from the day of the incident giving rise to such injury, illness or

death, notwithstanding any provision of law of any state or country to the contrary.

Although Caron's original complaint was filed within this contractual limitations period, his over-service claim was not present in his original complaint; it was added in an amendment months later, after the one-year period had run. On NCL's Motion to Dismiss, the District Court held the waiver valid and enforceable, interpreting it to bar adding untimely claims to an already-filed suit, and held that Caron's allegations of over-service did not relate back to his original filing date.

We address each of these holdings in turn.

### B.

Under general maritime law, a valid waiver of a passenger's right to sue requires a waiver term that has been reasonably communicated to the passenger. *Nash v. Kloster Cruise A/S,* 901 F.2d 1565, 1567 (11th Cir. 1990). The two-factor test for reasonable communication evaluates the physical characteristics of the clause and the passenger's opportunity to become meaningfully informed of the contract terms. *Myhra*, 695 F.3d at 1244.

Caron does not object to the physical location or readability of the waiver language. Nor does he suggest that he lacked an opportunity to become informed of what the terms—the words constituting the contract—were. Rather, he suggests, the word "suit" is ambiguous and should be construed to permit claims first mentioned in an amended complaint more than one year after the incident, as long

12

as the initial complaint is filed within the year. Furthermore, according to Caron, if the waiver were interpreted to bar his claim, it would be invalid, since this meaning of "suit" was not reasonably communicated to him by the text of the contract.

We disagree because when read in context, the provision unambiguously bars a passenger from raising new claims in an amended complaint more than a year after an incident. *Cf. Kohlheim v. Glynn Cty.*, 915 F.2d 1473, 1479 (11th Cir. 1990) (finding that an initially ambiguous contract term was clarified by context). Under the subheading "Suits for Injury or Death," the contract features two clauses that bar personal-injury suits except as specified. The first clause provides in part "no *suit* . . . shall be maintained against the Carrier for emotional or physical injury . . . of Guest unless written notice of the *claim*, including a complete factual account of the basis of the claim, is delivered" within a specified time frame (emphasis added). The second clause imposes a limitations period requiring that a "suit" be "commenced within one (1) year from the day of the incident giving rise to such injury, illness or death."

The notice clause makes clear the relationship between a "claim" and a "suit." This clause requires a passenger to give written notice of each claim he alleges in the suit. It would make no sense to interpret this provision as allowing the passenger to give notice of one claim but then bring a lawsuit for different or additional claims. Our interpretation is bolstered by the notice clause's

13

specification that the passenger provide NCL with "a complete factual account of the basis of" his claim. It would likewise be nonsensical for this provision to permit the passenger to provide the factual basis of his claim to NCL before filing suit but then later change the factual basis to support a different claim.

The reference to "suit" in the second clause—the one that features the one year limitation at issue here—must be interpreted in light of and consistent with its earlier use. Thus, "suit" in this clause must refer to a lawsuit alleging a claim or claims for which notice was given.

Because of this language, the limitations provision is reasonably subject to only one interpretation: that it is to be read like a statute of limitations, barring not only untimely suits but also untimely claims added to already-filed suits. The word "suit," on its own and without considering the context, is susceptible of the meaning that Caron attaches to it. But our duty is to interpret the contract as a whole, not each term in a vacuum. *See* Restatement (Second) of Contracts § 202(b) (1981). Here, the context resolves any potential ambiguity about the meaning of "suit."

Since the limitations provision was unambiguous in context, and the presentation of its terms within the contract document was reasonable, its meaning was reasonably communicated to Caron. Caron objects to the specialized meaning of "suit" in its context in the contract. But Caron has not proposed a reasonable

14

alternative construction that would render the contract insufficiently communicative of NCL's proposed meaning. NCL's duty is *reasonable* communication; it has no responsibility to disabuse its customers of every imaginable-but-unreasonable interpretation of the contract terms.

So Caron's over-service claim is time-barred unless it relates back to his original filing date.

## C.

Relation back is a legal fiction employed to salvage claims that would otherwise be unjustly barred by a limitations provision. *See McCurdy v. United States*, 264 U.S. 484, 487, 44 S. Ct. 345, 346 (1924); *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993). Under Rule 15, a claim in an amended complaint relates back to the filing date of the original complaint if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). When the facts in the original complaint do not put the defendant "on notice that the new claims of negligence might be asserted," but the new claims instead "involve[] separate and distinct conduct," such that the plaintiff would have to prove "completely different facts" than required to recover on the claims in the original complaint, the new claims do not relate back. *Moore*, 989 F.2d at 1132.

15

Here, the over-service claim does not relate back. The original complaint made no mention of alcohol and focused mostly on the physical condition of various areas of the ship, alleging various failures to maintain its "manholes, floors, walkways, or thresholds" in a safe condition. For example, Caron complained of inadequate lighting around hazards, unreasonably slippery floors, and failure to ensure proper drainage of liquids. Such allegations did nothing to put NCL on notice that Caron could complain of over-service of alcohol.

Nor are the complaint's generic allegations capacious enough to smuggle Caron's over-service claim into the case. The complaint alleges NCL's "failure to take proper precautions for the safety of passengers using its manholes, floors, walkways, or thresholds." This allegation, by its terms, could conceivably encompass serving more alcohol than passengers could safely consume before walking elsewhere on the ship. But the test for relation back is not whether the new facts alleged could substantiate an old, boilerplate claim but whether the old facts alleged could put the defendant on notice that the new claim might be part of the litigation. Here, Caron's original allegations did not put NCL on notice that over-service of alcohol (or anything involving alcohol, for that matter) could be relevant to the case.

Caron's over-service claim thus does not relate back and is barred by the limitations clause.

IV.

The District Court granted summary judgment for NCL on Caron's other negligence theories. We review a district court's grant of summary judgment *de novo*. *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010). We will affirm "if we conclude that there is no genuine issue of material fact—that is, if no fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013).

Federal maritime law provides the substantive law for this case. *Everett v. Carnival Cruise Lines*, 912 F.2d 1335, 1358 (11th Cir. 1990). Under the maritime law of negligence, Caron must prove that 1) NCL had a duty to protect him from a particular injury, 2) NCL breached that duty, 3) NCL's breach proximately caused his injury, and 4) he incurred damages. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012). To survive summary judgment, Caron must produce evidence establishing the existence of a genuine issue of material fact as to each of the elements.

Caron included twenty-one separate allegations of negligence in his amended complaint, most of which asserted that the open escape hatch was dangerous. He also alleged that NCL was negligent in allowing him access to the area where he fell and failing to properly warn him of the area's hidden dangers. Still, the District Court concluded summary judgment was proper, since Caron did

17

not produce sufficient evidence that the hatch was dangerous, that NCL had notice of the danger, or that NCL's crewmembers acted unreasonably upon encountering him in the hallway.

## A.

To survive summary judgment on his negligence claim based on a dangerous condition, Caron must produce evidence, sufficient for a jury to find for him, that the hatch was a dangerous condition of which NCL had notice. As the District Court correctly concluded, Caron did not do so.

Caron cannot show that the hatch he fell down was unreasonably dangerous. To get to the hatch, Caron had to pass through two clearly marked doors. The first indicated that the area was restricted and that only crewmembers were allowed in. The second indicated that persons passing through the door should use caution, and specified that only authorized crew were allowed in. Despite these measures that NCL took to keep passengers away from the hatch, Caron contends that they were insufficient to render the hatch reasonably non-dangerous. But the evidence Caron presents is insufficient to create a genuine issue of material fact on dangerousness.

Caron sought to prove dangerousness by expert and fact testimony about whether the doors to the crew-only areas and the hatch door itself should have been locked.[5] Caron's expert contended that the hatch door, as well as the marked crew-

_____

[5] None of these doors had locking mechanisms installed at all.

18

only doors, should have had locking mechanisms installed, since those doors could have been locked without compromising their usability as emergency exits from the bow-thruster room, and since locking them would have been safer. Caron's fact witness, an assistant carpenter with NCL, stated his belief that emergency hatches on the ship are generally locked and cannot be accessed from the corridor.

We agree with the District Court that this testimony did not create a genuine issue of material fact on whether the absence of locks rendered the hatch dangerous. It may be safer to lock the doors than to leave them unlocked, but it does not follow that the absence of door locks rendered the hatch unreasonably unsafe. Additionally, one employee's perception that hatches are generally locked does not create a genuine issue of material fact on whether NCL had a policy of locking its hatch doors. Caron thus failed to meet his burden to produce sufficient evidence that the hatch was unreasonably dangerous, and summary judgment was proper on his dangerous-condition theory.

Even if Caron had produced evidence of dangerousness, summary judgment still would have been proper, as Caron failed to produce evidence that NCL was on notice of the dangerous condition. *See Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989). NCL's uncontroverted records showed that no injuries similar to Caron's had been reported on any ship of NCL's in the last five years. None of Caron's proffered evidence on appeal, which mostly describes

19

NCL's efforts to keep passengers out of crew-only areas and remove them when they enter, suggests that NCL had actual or constructive notice that the hatch was dangerous. Summary judgment was thus proper on the notice issue as well.

B.

We similarly find no error in the District Court's treatment of the allegations of unreasonable behavior by NCL's crew.

Caron alleges that various crewmembers failed to follow NCL's policy on passengers in crew-only areas. Specifically, Caron alleges that crewmembers acted unreasonably after encountering him in the crew-only area by failing to escort him back to his cabin, by losing track of him, and by calling off the search for him while he remained in the hatch.

None of these contentions can survive summary judgment. Caron presented testimony from crewmembers, suggesting that NCL's policy requires crew who find passengers in crew-only areas to escort the passengers back to the passenger area of the ship. Other crewmembers testified that NCL policy required crew to attempt to speak with the passenger and, if the passenger was unresponsive, to call security. It is undisputed that, when two crewmembers found Caron in the crew-only area and tried to talk with him, he did not respond. While the crew called security, Caron began to walk or run away. The crewmembers attempted to follow Caron, but he outpaced them and disappeared. Within two minutes of his initial

20

encounter with the crew, Caron had fallen down the hatch. Security arrived within a few minutes, after Caron had already fallen, and searched for Caron but did not find him.

We agree with the District Court that Caron has not presented sufficient evidence of negligence on the part of NCL's crew. Caron did not controvert the testimony that NCL crew were required to call security if a passenger was unresponsive when spoken to. While the crewmembers were calling security, Caron escaped down the hall and outpaced at least one crewmember who attempted to follow. Perhaps the crew could have physically blocked Caron from running down the hall or chased after him quickly enough not to lose sight, but Caron has presented no evidence that the standard of care is set that high. All available evidence suggests that the crewmembers tried to comply with NCL's policy and that they were not unreasonably lax in trying.

Caron contends as well that NCL's security personnel were negligent in calling off the search before finding him, leaving him to languish in the bow-thruster room for hours. We agree with the District Court that summary judgment is proper here as well, since Caron's injury had already occurred by the time NCL called off the search. Caron's eleventh-hour allegations, not fairly traceable to his complaint, of additional injury due to the time he spent in the bow-thruster room do not properly put the issue before the Court. *Miccosukee Tribe of Indians of Fla.*

21

*v. United States*, 716 F.3d 535, 559 (11th Cir. 2013) (refusing to consider allegations raised for the first time in a response to a motion for summary judgment). [6]

## V.

NCL was entitled to dismissal of Caron's over-service claim and summary judgment on Caron's negligence claim. We thus AFFIRM the District Court's judgment and DENY AS MOOT Caron's Motion for Leave to File an Amended Complaint and his Motion to Supplement the Record.

SO ORDERED.

---

[6] Caron had additionally appealed several magistrate orders. As he did not address these orders in his opening brief, his contentions on the topic are waived. *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1306 (11th Cir. 2012).