[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 19-10455
Non-Argument Calendar

————————————————

D.C. Docket No. 0:18-cv-62522-UU


TANYA LEBEDINSKY,

Plaintiff - Appellant,

versus

MSC CRUISES, S.A.,

Defendant - Appellee.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

(November 27, 2019)

Before MARTIN, JILL PRYOR and NEWSOM, Circuit Judges.

PER CURIAM:

Tanya Lebedinsky appeals the district court's grant of MSC Cruises, S.A.'s motion to dismiss for improper venue.  On appeal, Lebedinsky argues that the district court erred when it ruled that the forum selection clause contained in MSC Cruises' contractual terms and conditions was enforceable, requiring her to bring her lawsuit in Italian court.  After careful review, we affirm the district court's dismissal.

## I.    BACKGROUND

### A.    Factual Background

Lebedinsky took a cruise aboard the *MSC Musica,* beginning and ending in Venice, Italy, with intermediate stops in Italy, Greece, and Montenegro.  Lebedinsky's daughter purchased the ticket for her mother through an online ticket agent.  Lebedinsky's involvement was limited to payment; she does not recall reviewing confirmation documents for the trip.  She does not dispute that she received the documents, however.  While on the cruise, Lebedinsky fell, resulting in a host of serious injuries.  She was medically disembarked to an Italian hospital and then flown to a New York hospital where she continued to receive treatment.

MSC Cruises issued a Booking Confirmation to Lebedinsky five months prior to the start of her voyage and again to her travel agent days prior to the voyage.  The Booking Confirmation contained a "Booking Terms and Conditions" section, under the heading "**IMPORTANT INFORMATION**":

2

> **Booking Terms and Conditions**
> The present booking is regulated by the Booking Terms and Conditions. Passengers acknowledge that they have received a copy, read and accepted the Booking Terms and Conditions before confirming their booking.  A copy of the Standard Booking Terms and Conditions [] is also available on our website www.msccruises.com. Changes and cancellations are subject to penalties according to the Booking Terms and Conditions.

Doc. 9-3 at 10.[1]  The Booking Terms and Conditions were on the same page as other important information such as when final payments were due, what charges applied to cancellation requests, and what travel documents were required to board the cruise.

Following the link in the Booking Terms and Conditions led to MSC Cruises' website home page.  A link at the bottom of the home page led to the "Terms and Conditions" governing *MSC Musica*'s voyage.  On the Terms and Conditions page, there was the following notice:

> **NOTICE TO PASSENGER:** Below and attached to your Boarding Coupon, Passenger Ticket and (if contracted) Transfer Voucher are the terms and conditions of the Passenger Contract. Before accepting them, carefully read all the terms of the following Passenger Contract *which contains important conditions and limitations including Clauses 20 to 26 which set out some of our rights, limitations of liability, court jurisdiction and time limits to file claims or to bring suit.*

*Id.* at 18 ("Passenger Notice") (emphasis added).  Directly below the Passenger Notice was a "Passenger Contract" paragraph:

---

[1] "Doc. #" refers to the numbered entry on the district court's docket.

> **PASSENGER CONTRACT:** Carefully read all terms and conditions before accepting them. Clauses 20 to 26 *set out your rights and limitations to make claims*. Please retain this document for future reference. TO REVIEW THE PASS[ENGER] CONTRACT <u>CLICK HERE</u>.

*Id.* at 18 (emphasis added).  Clicking on the link within the phrase "TO REVIEW THE PASS[ENGER] CONTRACT <u>CLICK HERE</u>," led to all the provisions within the Passenger Contract.

An "Applicable Law" section in the Passenger Contract contained a forum selection clause stating that "[f]or Voyages that do not include a port in [the] U.S.A., all claims arising out of this Contract or relating to or arising from this Contract or your cruise shall be brought in and be subject to the exclusive jurisdiction of the Courts of Naples, Italy."  *Id.* at 19-20.  The "Jurisdiction" section further noted that "[u]nless differently provided by any applicable law, [] all claims against [MSC Cruises] shall be brought in and be subject to the exclusive jurisdiction of the Courts of Naples, Italy."  *Id.* at 24.

The Passenger Contract also included Conditions of Carriage governing the voyage on *MSC Musica*:

> **CONDITIONS OF CARRIAGE**
>
> **Standard conditions of carriage**
>
> These Conditions of Carriage set out the terms that govern the relationship, responsibilities and liabilities as between the Passenger and the Carrier and are BINDING ON THE PARTIES.

4

The Passenger has entered into a Passage Contract with an Organizer and these conditions have been incorporated into the Passenger's contract with the Organizer. These Terms and Conditions of Carriage will also apply where the Vessel is being used as a floating hotel whether or not there is a Passage Contract and whether or not there is any carriage.

You must carefully read these conditions of carriage which set out your rights, responsibilities and limitations to make claims against the Carrier, its servants and/or agents. The Carrier's liability is limited as set out in Clauses 22 and 23.

Doc. 9-2 at 2. Under the "Liability" section of the Conditions of Carriage, MSC Cruises expressly incorporated the Athens Convention, an international treaty governing the carriage by sea of passengers and their luggage. Here, MSC Cruises noted that "[t]he liability of the Carrier for death, personal injury or illness to the Passenger shall not exceed 46,666 Special Drawing Rights ("SDR")[2] as provided and defined in the Athens Convention." Appellant Br., Addendum 1 at 39-40.

We refer to the Booking Terms and Conditions, the Passenger Contract, and the Conditions of Carriage on MSC Cruises' website collectively as the "terms and conditions."

---

[2] An SDR is an artificial currency instrument created by the International Monetary Fund ("IMF"), which uses SDRs for internal accounting purposes. The SDR serves as the unit of account of the IMF and some other international organizations. *Special Drawing Right*, International Monetary Fund (Mar. 8, 2019), https://www.imf.org/en/About/Factsheets/Sheets/ 2016/08/01/14/51/Special-Drawing-Right-SDR (last visited Nov. 19, 2019).

**B.    Procedural Background**

Lebedinsky filed a lawsuit against MSC Cruises in the United States District Court for the Southern District of Florida.  MSC Cruises moved to dismiss for improper venue and on *forum non conveniens* grounds.  The district court granted the motion, concluding that the forum selection clause required Lebedinsky to bring her lawsuit in Italy.  This appeal followed.

## II.    STANDARD OF REVIEW

We review *de novo* a district court's dismissal based on a forum selection clause in an international agreement.  *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290-91 (11th Cir. 1998).

## III.    DISCUSSION

Forum selection clauses are presumptively valid and enforceable unless the plaintiff makes a "strong showing" that enforcement would be unfair or unreasonable under the circumstances.  *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–95 (1991); *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972)).  A forum selection clause will be invalidated when:  "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of [her] day in court because of inconvenience or unfairness; (3) the chosen law would deprive

6

the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Id.*

On appeal, Lebedinsky argues that the district court erred in concluding that the forum selection clause was valid and enforceable because:  (1) the forum selection clause was induced by overreaching because it was not reasonably communicated to passengers, (2) the invocation of the Athens Convention contravenes public policy and would effectively deprive her of a remedy, and (3) circumstances, including her injuries and her treatment in New York, make Naples, Italy an inconvenient forum.  We address these arguments in turn.

**A.    The Forum Selection Clause's Formation Was Not Induced by Fraud or Overreaching.**

Lebedinsky argues that the terms and conditions, including the forum selection clause, were not reasonably communicated because MSC Cruises did not include a sufficiently prominent warning about the content of the terms and conditions nor did it present them in a clear enough manner.

We apply a two-part test of "reasonable communicativeness" when determining whether a forum selection clause was induced by fraud or overreaching, considering (1) the clause's physical characteristics and (2) whether the plaintiffs had the ability to become meaningfully informed of the clause and to reject its terms.  *Id.*; *see also Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1244–46 (11th Cir. 2012), *superseded on other grounds as*

7

*recognized by Caron v. NCL (Bahamas) Ltd.*, 910 F.3d 1359 (11th Cir. 2018)

(applying the two-part "reasonable communicativeness" test).  MSC Cruises'

forum selection clause satisfies both prongs.

### 1.    The Clause's Physical Characteristics

Lebedinsky contends that MSC Cruises' forum selection clause failed the

physical characteristics prong because the clause lacked "clarity in plain language"

and the information MSC Cruises provided did not "conspicuously call attention"

to the forum selection clause.  Appellant Br. at 23, 25.  To satisfy this prong,

however, it is enough that the forum selection clause was clearly set out and

contained clear language.  MSC Cruises' forum selection clause met these criteria.

The placement and appearance of MSC Cruises' forum selection clause were

like the clause in *Estate of Myhra*, which we held satisfied the physical

characteristics prong.  *See* 695 F.3d at 1244–45.  There, the forum selection

language was included near the bottom of a "Booking Conditions" section, which

appeared on page 128 of a cruise line's "obviously lengthy booklet."  *Id.* at 1244.

The forum selection language was set out in identical type as the rest of the

conditions but under "clear plain-English headings."  *Id.* at 1245.  In this case, the

passenger was required to follow two hyperlinks and then scroll down to locate the

forum selection clause; we find no meaningful difference between doing so and

paging through a booklet.  And because the forum selection language in MSC

8

Cruises' terms and conditions had the same characteristics—set out in identical typeface under clear headings—it satisfied the physical characteristics prong.  *See id.*

### 2.    Lebedinsky's Opportunity to Become Meaningfully Informed of the Clause

The second prong of the "reasonably communicated" test asks whether a plaintiff had the ability to "become meaningfully informed of the clause and reject its terms." *Krenkel*, 579 F.3d at 1281.  Citing *Wallis v. Princess Cruises, Inc.* as support, Lebedinsky contends that MSC Cruises failed to "meaningfully inform" her of the relevant terms and conditions, including the forum selection clause, because a layperson could not understand the implications of the inclusion of the Athens Convention in the limitations of liability provisions.  *See* 306 F.3d 827, 836–37 (9th Cir. 2002).  This argument fails for two reasons.  First, Lebedinsky impermissibly shifts the focus of the "meaningfully inform" inquiry from the forum selection clause to the terms and conditions in their totality.  *See Krenkel*, 579 F.3d at 1281 ("A useful two-part test of 'reasonable communicativeness' takes into account . . . whether the plaintiff[] had the ability to become meaningfully informed *of the [forum selection] clause* and to reject its terms" (emphasis added)).  Second, the court in *Wallis* was examining a more complex provision than the one found here.  *See* 306 F.3d at 830, 836–37.  The limitation of liability provision in *Wallis* required the passenger to reference and interpret several outside sources to

9

fully understand its implications.  The court held that a layperson could not be expected to fully understand the provision and, therefore, it was not reasonably communicated to the passengers.  *Id.*  But, here, the forum selection clause's language is clear and unambiguous, requiring that all claims be brought in Italian court if, like the *MSC Musica*, the cruise ship did not enter a United States port.  Therefore, *Wallis* is inapposite.

Unlike in *Wallis*, in this case Lebedinsky had the opportunity to become meaningfully informed of the forum selection clause.  Both Lebedinsky and her travel agent were given the Booking Confirmation with a notice regarding the Booking Terms and Conditions, which contained a link to MSC Cruises' website, where the terms and conditions, including the forum selection clause, could be found.  Lebedinsky does not dispute receipt of the Booking Confirmation over five months before the cruise.  And the language of the forum selection clause unambiguously stated that claims arising out of the voyage on *MSC Musica* had to be brought in Italy.  Therefore, Lebedinsky had the time and opportunity to become meaningfully informed of the forum selection clause.  *See id.*; *see also Vanderham v. Brookfield Asset Mgmt., Inc.*, 102 F. Supp. 3d 1315, 1319–20 (S.D. Fla. 2015) (concluding that plaintiff was meaningfully informed when sent an email with a link containing information regarding forum selection clause).

MSC Cruises' forum selection language satisfies the two-part test of "reasonable communicativeness" and, therefore, was not induced by fraud or overreaching.

**B.      The Forum Selection Clause Does Not Deprive Lebedinsky of Her Day in Court Because of Inconvenience or Unfairness.**

A forum selection clause can be unreasonable—and therefore unenforceable—"if the chosen forum is seriously inconvenient for the trial of the action." *M/S Bremen*, 407 U.S. at 16.  When the parties to an agreement "contemplated the claimed inconvenience," however, a court requires "a heavy burden of proof" to render a forum selection clause unenforceable.  *Id.* at 16-17. Lebedinsky has not met that burden.

Lebedinsky contends that circumstances—including the continued pain she suffered in the United States from her injury, her treatment in New York, fact witnesses located in New York, and MSC Cruises' connection to the United States[3]— render the forum selection clause so inconvenient that it is unenforceable.  But these circumstances are not the type of uncontemplated inconveniences that justify the invalidation of a forum selection clause.  *See id.* at 16.

---

[3] Lebedinsky characterizes MSC Cruises as a "U.S. headquartered company."  Appellant Br. at 32.  MSC Cruises disputes that it is headquartered in the United States.  We do not resolve this factual dispute because it does not affect our determination that the forum selection language binds Lebedinsky.

11

The *MSC Musica* did not travel to any United States port of call; its journey began and ended in Italy with stops in other European ports.  Italy, therefore, is not a remote alien forum for this dispute.  Instead, Italy is the forum where a dispute relevant to voyage on the *MSC Musica* would most likely arise.  That Lebedinsky's injury was treated in New York does not change that fact; an injury taking place on the *MSC Musica* is exactly the "particular controversy [the parties had] in mind" when they selected Italy as a forum.  *Id.* at 17.

We are sympathetic to Lebedinsky's injuries, but "whatever inconvenience [she] would suffer by being forced to litigate in the contractual forum as [she] agreed to do was clearly foreseeable at the time of contracting."  *Id.* at 17-18 (internal quotation marks omitted).  The enforcement of the forum selection clause thus does not deprive Lebedinsky her day in court due to inconvenience.

**C.    Italian Law Would Not Deprive Lebedinsky of a Remedy.**

Lebedinsky asserts that she has incurred approximately $750,000 in damages, and due to MSC Cruises' invocation of the Athens Convention and its liability limitations, Italian courts offer essentially no remedy.  Even if we assume that the Italian court would apply the Athens Convention,[4] Lebedinsky would not be deprived of a remedy.

---

[4] *See Estate of Myhra*, 695 F.3d at 1243 ("[A] choice-of-forum clause merely directs the litigation to a particular forum, usually one with a significant connection with the incident or

12

MSC Cruises' terms and conditions limit liability pursuant to the Athens Convention for voyages where the cruise ship embarks or disembarks from a country in the European Union, as *MSC Musica* did.  The Athens Convention states:  "The liability of the carrier for the death of or personal injury to a passenger shall in no case exceed 46,666 [SDR] per carriage."  Athens Convention Relating to the Carriage of Passengers and Their Luggage by Sea, art. 7, Nov. 19, 1976, 1463 U.N.T.S. 19.  Thus, assuming without deciding that the Athens Convention would be applied, it would appear to limit Lebedinsky's recovery to 46,666 SDRs, or approximately $64,000,[5] well short of the $750,000 in damages that Lebedinsky claims to have incurred.  But the potential for decreased recovery is not the same as no remedy.

This Court does not invalidate a forum selection clause "simply because the remedies available in the contractually chosen forum are less favorable than those available in the courts of the United States."  *Lipcon*, 148 F.3d at 1297.  Only remedies that are "so inadequate that enforcement would be fundamentally unfair" render a chosen forum inadequate.  *Id.*; *see also Riley v. Kingsley Underwriting Agencies*, 969 F.2d 953, 958 (10th Cir. 2002) ("The fact that an international transaction may be subject to laws and remedies different and less favorable than

---

with the parties, for adjudication.").  A forum selection clause does not mandate what substantive law applies; the jurisdiction where a case is heard makes that determination.

[5] Conversion rates for SDRs to U.S. dollars can be found at https://www.imf.org/external/np/fin/data/rms_sdrv.aspx.

13

those of the United States is not a valid basis to deny enforcement, provided that the law of the chosen forum is not inherently unfair."). We acknowledge that there may be a point at which a reduced recovery dictated by the law of a chosen forum is so low relative to the plaintiff's damages as to render the choice of forum fundamentally unfair. But here, the possibility of reduced recovery does not amount to fundamental unfairness, and the potential application of the Athens Convention cannot justify the forum selection clause's invalidation. *See Lipcon*, 148 F.3d at 1297.

Lebedinsky offers no other argument as to the inadequacy of Italy as a forum. Therefore, she has not shown that Italy as a forum would deprive her of a remedy.

## D. Enforcement of the Forum Selection Clause Would Not Contravene Public Policy.

Lebedinsky contends that there is a strong public policy contained within the United States' "general maritime law that opposes carrier limits on passenger liability for negligence," evidenced by Congress's passage of 46 U.S.C. § 30509 prohibiting the owner of a ship that travels between ports in the U.S. and a port in a foreign country from limiting its liability to passengers. Appellant Br. at 19. For this argument, too, she assumes that enforcement of the forum selection clause would likely result in application of the Athens Convention. Because the Athens Convention limits liability for negligence, she argues that its application would

14

contravene public policy. This Court has previously rejected the argument that where enforcing a forum clause would effect a limitation of liability, public policy bans enforcement of the clause. *See Estate of Myhra*, 695 F.3d at 1242-43.

Specifically, in *Estate of Myhra*, we addressed the questions of "whether the use of a forum-selection clause that selects venue where domestic law, if applicable, would effect a limitation of liability should be considered within the ambit of [§ 30509's] prohibition," and "whether such a prohibition constitutes a sufficiently strong public policy of the United States to bar enforcement of the clause." *Id.* at 1242. We answered both questions in the negative. *See id.* at 1243.

Further, as explained in *Estate of Myhra*, Congress's opposition to liability limitation provisions "was to forbid the unilateral imposition of a limitation of liability by a ship owner *without any recourse to judicial process*." *Id.* (emphasis added). This policy concern does not extend to forum selection clauses because forum selection clauses merely direct a dispute to a particular jurisdiction. "[I]t is clear that Congress understood that the usual rules of jurisdiction and choice of law would produce, in some instances, a limitation on liability." *Id.* Applying the reasoning we employed in *Estate of Myhra*, MSC Cruises' forum selection clause would not contravene public policy.

Accordingly, MSC Cruises' forum selection clause (1) was not induced by fraud or overreaching, (2) would not deprive Lebedinsky of her day in court, (3)

15

would not deprive her of a remedy, and (4) did not contravene public policy. Lebedinsky therefore has not made a "strong showing" that its enforcement would be unfair or unreasonable under the circumstances. *Krenkel*, 579 F.3d at 1281. Lebedinsky may bring suit for redress of her injuries only in an Italian court, consistent with the terms of the forum selection clause.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court's grant of MCS Cruises' motion to dismiss.

**AFFIRMED.**

16