[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-11985

_____

AST & SCIENCE LLC,

                              Plaintiff-Counter Defendant-Appellee,

*versus*

DELCLAUX PARTNERS SA,

                              Defendant-Counter Claimant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-23335-DPG

_____

Before ROSENBAUM, NEWSOM, and MARCUS, Circuit Judges.

NEWSOM, Circuit Judge:

This is a breach-of-contract case involving two corporate parties to an agreement under which one engaged the other to help it "find" investment capital. After almost three years of litigation, a decision on the merits, and an appeal to this Court, a question arose regarding whether diversity jurisdiction existed. Following a voluntary dismissal of the appeal, the district court held that, in fact, the parties were not diverse. Even so, the court ruled—addressing the issue for the first time—that it had *federal-question* jurisdiction over the case and, therefore, that its merits decision should stand.

We disagree. We hold that, because the breach-of-contract claim asserted in this case is a creature of state (rather than federal) law, and because the case doesn't satisfy the multi-factor test established by the Supreme Court in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), the district court lacked federal-question jurisdiction. Accordingly, we vacate the district court's judgment and remand with the instruction that the case be dismissed for lack of subject-matter jurisdiction.

## I

AST & Science LLC is a company "in the business of satellite technology and global satellite-based communications." Br. of Appellee at 3. In the process of seeking investors, AST hired Delclaux Partners SA to be a "finder"—that is, to introduce AST to registered broker-dealers. Delclaux did so by introducing AST to LionTree Advisors LLC, which AST hired to handle its Series A financing.

Two contracts arose out of this arrangement. First, AST and Delclaux signed what we'll call the Finder's Fee Agreement, which entitled Delclaux to a percentage of any fee payable to broker-dealers it found. Notably here, provisions in that agreement required Delclaux to abstain from any action that "would require [it] to be registered as an investment advisor or broker-dealer" and to "maintain all licenses, permits and other authorizations required by applicable laws, rules or regulations in order to perform the services hereunder." Finder's Fee Agreement, at 2, 4, Dkt. No. 70-3. Second, and separately, AST and LionTree executed what we'll call the LionTree Agreement, which established a transaction fee payable to LionTree for its services.

After the Series A financing concluded, AST terminated the LionTree Agreement. Later that year, it commenced its Series B financing with a new broker-dealer. Following the Series B financing, Delclaux informed AST that it thought it was owed fees from four of the transactions in that series because, it said, they triggered certain "tail" provisions of the LionTree Agreement.

## II

AST refused to pay and instead sued Delclaux for breaching the Finder's Fee Agreement by acting as an unregistered broker-dealer. Delclaux denied that it had violated the Finder's Fee Agreement and counterclaimed for fees related to the four Series B transactions. The parties cross-moved for summary judgment on AST's complaint and Delclaux's counterclaim. Adopting a magistrate judge's report and recommendation, the district court denied

summary judgment on AST's complaint and granted it to AST on Delclaux's counterclaim.

Delclaux appealed. We issued jurisdictional questions asking both (1) whether the district court's order was final given the pendency of AST's claim against Delclaux and (2) whether AST's complaint properly alleged diversity jurisdiction. In response, Delclaux voluntarily dismissed its appeal, presumably because of the absence of finality. The parties then settled AST's claim against Delclaux, leaving only Delclaux's counterclaim remaining.

Back before the district court, and now realizing that diversity jurisdiction might not exist, Delclaux moved under Federal Rule of Civil Procedure 60(b)(4) for relief from final judgment and dismissal for lack of subject-matter jurisdiction. The district court denied the motion, holding that while it didn't have diversity jurisdiction, it *did* have federal-question jurisdiction.

In this second appeal, Delclaux challenges both the district court's holding that it had subject-matter jurisdiction and its grant of summary judgment for AST on Delclaux's counterclaim.[1]

---

[1] "We review de novo . . . a district court's ruling upon a Rule 60(b)(4) motion to set aside a judgment as void, because the question of the validity of a judgment is a legal one." *Burke v. Smith*, 252 F.3d 1260, 1263 (11th Cir. 2001) (citation modified). Even if Delclaux hadn't filed a Rule 60(b)(4) motion, we "are obligated to inquire into subject-matter jurisdiction *sua sponte* whenever it may be lacking." *Williams v. Chatman*, 510 F.3d 1290, 1293 (11th Cir. 2007) (per curiam) (citation modified). That review is also de novo. *Id.*

23-11985                Opinion of the Court                5

### III

"Generally, a judgment is void under Rule 60(b)(4) if the court that rendered it lacked jurisdiction of the subject matter . . . ." *Burke v. Smith*, 252 F.3d 1260, 1263 (11th Cir. 2001) (citation modified). "In a given case, a federal district court must have at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997).

AST's complaint asserted both diversity jurisdiction and federal-question jurisdiction. On remand from the dismissal of Delclaux's initial appeal, the district court held "that it d[id] not have diversity jurisdiction in this case," Order Den. Mot. for Relief from Final J., at 9, Dkt. No. 162, and AST doesn't challenge that determination before us.[2]

The district court held, though—addressing the issue for the first time—that it had *federal-question* jurisdiction. In particular, the

---

[2] Rightly so. "Alienage diversity, like general diversity under 28 U.S.C. § 1332(a)(1), must be complete; an alien on both sides of a dispute will defeat jurisdiction." *Caron v. NCL (Bah.), Ltd.*, 910 F.3d 1359, 1364 (11th Cir. 2018). AST is an LLC, which "like a partnership, is a citizen of any state of which a member of the company is a citizen." *Mallory & Evans Contractors & Eng'rs, LLC v. Tuskegee Univ.*, 663 F.3d 1304, 1305 (11th Cir. 2011) (per curiam) (citation modified). AST has seven members who are aliens, and Delclaux is a Spanish corporation (and therefore a citizen of Spain), so there is no complete diversity here.

court concluded that AST's state-law breach-of-contract claim required the resolution of a constituent federal issue—namely, whether Delclaux operated as an unregistered broker-dealer in violation of § 15(a)(1) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(a)(1). Having found jurisdiction, the district court left in place its decision rejecting Delclaux's counterclaim on the merits.

For reasons we will explain, we disagree with the district court's jurisdictional determination.

## A

Pursuant to 28 U.S.C. § 1331, federal "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." According to Supreme Court precedent, a case can "aris[e] under" federal law in either of two ways. First, and most obviously, "a case arises under federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013). This conventional path to federal-question jurisdiction isn't available here because AST's complaint—to which we must look in ascertaining arising-under jurisdiction, *see Kemp v. IBM Corp.*, 109 F.3d 708, 712 (11th Cir. 1997)—is founded exclusively on the Finder's Fee Agreement, which is governed by state law. Second, even "where a claim finds its origins in state rather than federal law," the Supreme Court has "identified a 'special and small category' of cases in which arising under jurisdiction still lies." *Gunn*, 568 U.S. at 258 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)).

23-11985                Opinion of the Court                7

This "slim category," *Empire*, 547 U.S. at 701, is circumscribed by a four-factor test outlined in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005). The path described in *Grable* is successfully trod very rarely; in fact, since 1908, when the Supreme Court articulated the "well-pleaded complaint" rule in *Louisville & Nashville Railroad Co. v. Mottley*, 211 U.S. 149 (1908), the Court "has upheld § 1331 jurisdiction over claims lacking a federal cause of action in only four contexts." William Baude et al., *Hart and Wechsler's The Federal Courts and The Federal System* 1050 (8th ed. 2025); *see Grable*, 545 U.S. at 314–16; *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164 (1997); *Smith v. Kansas City Title & Tr. Co.*, 255 U.S. 180, 201 (1921); *Hopkins v. Walker*, 244 U.S. 486, 490–91 (1917).

Under *Grable*, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258 (citing *Grable*, 545 U.S. at 313–14). For federal-question jurisdiction to exist, "all four of these requirements" must be satisfied. *Id.*[3]

---

[3] AST contends that jurisdiction also lies directly under 15 U.S.C. § 78aa(a), which, as described by the Supreme Court, "provides federal district courts with exclusive jurisdiction 'of all suits in equity and actions at law brought to enforce any liability or duty created by [the Exchange Act] or the rules and regulations thereunder.'" *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 380 (2016) (quoting 15 U.S.C. § 78aa(a)). Citing a concurring opinion in *Merrill Lynch*, AST asserts that § 78aa(a) establishes a simpler test

Because we find the "substantial[ity]" element missing, we needn't reach the remaining factors.

## B

The federal issue underlying AST's state-law breach-of-contract claim—again, whether Delclaux operated as an unregistered broker-dealer in violation of the Securities Exchange Act—is not "substantial." To be clear, the substantiality requirement isn't about whether "the federal issue [is] significant to the particular parties in the immediate suit"—as it often is—but is "instead [about] the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. We have recognized three factors that assist in deciding substantiality:

> First, a pure question of law is more likely to be a substantial federal question. Second, a question that will control many other cases is more likely to be a substantial federal question. Third, a question that the government has a strong interest in litigating in a federal forum is more likely to be a substantial federal question.

than *Grable*'s—namely, whether "AST's contract claim necessarily depends on a breach of a requirement created by the Exchange Act." Br. of Appellee at 26 (citing *Merrill Lynch*, 578 U.S. at 394 (Thomas, J., concurring)). That is incorrect. In fact, the *majority* opinion in *Merrill Lynch* says exactly the opposite— that § 78aa(a)'s "jurisdictional test matches the one we have formulated for § 1331." *Merrill Lynch*, 578 U.S. at 384. So regardless of whether we apply § 1331 or § 78aa(a), the analysis is the same.

*MDS (Can.) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 842 (11th Cir. 2013) (per curiam) (citations omitted). All three factors point away from substantiality in this case, as do assorted other considerations that the Supreme Court mentioned in *Gunn*.

### 1

First, the federal question arguably at issue here isn't purely legal. Contrast, for instance, the sorts of federal issues the Supreme Court has deemed substantial. *Smith* is paradigmatic; as the Court later explained it, *Smith* involved a substantial federal issue "because the 'decision depend[ed] upon the determination' of 'the constitutional validity of an act of Congress which is directly drawn in question.'" *Gunn*, 568 U.S. at 261 (quoting *Smith*, 255 U.S. at 201). Similarly, the Court explained in *Empire* that "*Grable* presented a nearly pure issue of law" because "[t]he dispute there centered on the action of a federal agency (IRS) and its compatibility with a federal statute." 547 U.S. at 700 (citation modified). In contrast, the *Empire* Court held that there was no federal-question jurisdiction over the "reimbursement claim" before it because the federal issue—which involved alleged "overcharges or duplicative charges by care providers"—was "fact-bound and situation-specific." *Id.* at 700–01.

We agree with AST and the district court that whether Delclaux falls into the "finder" exception to the federal securities laws' broker-dealer rules is "complex" and "evolving," Br. of Appellee at 21–22, and that it "would require an analysis and interpretation of a body of federal case law," Order Den. Mot. for Relief at

8. But those considerations cut against—not in favor of—substantiality because they tend to render the finder-status question "heavily fact-bound." *MDS*, 720 F.3d at 842. We aren't aware of—and haven't been pointed to—any binding precedent distinguishing between finders and broker-dealers, but the analysis employed by various district courts and in the SEC's "no-action" letters "is highly dependent upon the facts of [the] particular arrangement." *SEC v. Kramer*, 778 F. Supp. 2d 1320, 1336–37 & n.51 (M.D. Fla. 2011) (collecting cases); *see also Cornhusker Energy Lexington, LLC v. Prospect St. Ventures*, No. 8:04CV586, 2006 WL 2620985, at *6 (D. Neb. Sept. 12, 2006) (describing activities that could transform a finder into a broker-dealer, such as "analyzing the financial needs of an issuer, recommending or designing financing methods, involvement in negotiations, discussion of details of securities transactions, making investment recommendations, and prior involvement in the sale of securities"). That sort of context-intensive inquiry is "poles apart," *Empire*, 547 U.S. at 700, from the more straightforward analyses in *Smith* and *Grable*, which, again, turned respectively on the constitutionality of a federal statute and the statutory validity of a federal agency's action.

**2**

Second, and relatedly, our resolution of the finder-broker issue wouldn't have any meaningful precedential effect. As in *MDS*, "[b]ecause this question . . . is heavily fact-bound, our resolution of [it] is unlikely to control any future cases." 720 F.3d at 842. And "the highly specialized nature" of securities claims regarding an

entity's finder status strongly "suggest[s] that the resolution of this issue is unlikely to impact any future constructions of claims." *Id.*

### 3

Third, the government has no strong interest in having cases like this litigated and adjudicated in a federal forum. Contrast *Grable*, where a "plaintiff filed a state law quiet title action against [a] third party that had purchased [] property" from the IRS that the agency had seized to satisfy a tax delinquency. *Gunn*, 568 U.S. at 260 (citing *Grable*, 545 U.S. at 310–11). There, the Supreme Court concluded that the IRS's "direct interest in the availability of a federal forum to vindicate its own administrative action" warranted federal jurisdiction. *Grable*, 545 U.S. at 314–15. Here, the government isn't a party, nor is there any governmental action upstream of the suit. To the contrary, the SEC took no action against Delclaux, and this case arose solely because AST accused Delclaux of violating a private agreement.

### 4

Finally, several other considerations emphasized in *Gunn* likewise counsel against a finding of substantiality. Allowing a state court to decide cases like this won't undermine the development of a uniform body of securities law. "[A]ctual" securities cases will continue to be decided in federal court because, as was true of the patent-law question at issue in *Gunn*, Congress has "vest[ed] exclusive jurisdiction over actual [securities] cases" in federal courts. 568 U.S. at 261–62; *see* 15 U.S.C. § 78aa(a). In resolving those cases, "the federal courts are of course not bound by state court case-within-a-

case [securities] rulings." *Gunn*, 568 U.S. at 262.  Relatedly, "more novel questions of [securities] law . . . will at some point be decided by a federal court in the context of an actual [securities] case." *Id.* And finally, "the possibility that a state court will incorrectly resolve a state claim is not, by itself, enough to trigger the federal courts' exclusive [] jurisdiction, even if the potential error finds its root in a misunderstanding of [securities] law." *Id.* at 263.[4]

## IV

For the foregoing reasons, we hold that the district court lacked federal-question jurisdiction over this case.  Accordingly, we **VACATE** the district court's judgment and **REMAND** with the instruction that the case be dismissed for want of subject-matter jurisdiction.

---

[4] The Second Circuit cases cited by AST don't advance its cause.  Both involved registered broker-dealers suing national stock exchanges for failing to operate their markets in compliance with federal securities law.  *See NASDAQ OMX Group, Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1018–31 (2d Cir. 2014); *D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93, 99–104 (2d Cir. 2001).  Those decisions are not binding on us, and they are, in any event, a far cry from the situation we confront, which involves a single contract dispute between two private parties, the resolution of which won't directly affect anyone else.