[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12619
_____

D.C. Docket No. 1:18-cv-20653-UU

CARMELA DEROY,

Plaintiff - Appellee,

versus

CARNIVAL CORPORATION,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 30, 2020)

Before ROSENBAUM, GRANT, and HULL, Circuit Judges.

ROSENBAUM, Circuit Judge:

Fans of movies set in medieval times know that the narrow slits in otherwise seemingly impenetrable castle walls allowed castle defenders to launch arrows at

approaching castle attackers.[1]  This architectural feature was designed to protect the archer while still allowing the archer to defend the castle.[2]  It is known as a "loophole."[3]

But arrows were not the only thing that could fit through castle-wall loopholes.  Sometimes children and small adults could as well.[4]  And they could use them to escape the thick castle walls.[5]

It's not clear that the figurative usage of the term "loophole" derives from a reference to the architectural feature.  But the parallels between the two usages are nonetheless obvious.  Figuratively, "loophole" has come to mean "[a]n outlet or means of escape[;] [o]ften applied to an ambiguity or omission in a statute, etc., which affords opportunity for evading its intention."  *Loop-hole*, Oxford English Dictionary, https://www.oed.com/view/Entry/110180 (last visited June 29, 2020).

Here, Plaintiff-Appellee Carmela DeRoy attempts to take advantage of a supposed loophole in the forum-selection clause of a contract she entered into with

---

[1] *Loophole*, Grammarist, https://grammarist.com/interesting-words/loophole/ (last visited June 29, 2020); *Loophole*, Online Etymology Dictionary, https://www.etymonline.com/word/loophole (last visited June 29, 2020).

[2] *Loophole*, Grammarist, *supra* note 1.

[3] *What's the origin of "loophole"?*, The Straight Dope (Feb. 6, 2003), https://www.straightdope.com/columns/read/2071/whats-the-origin-of-loophole/; *see also Loophole*, Dictionary by Merriam-Webster, https://www.merriam-webster.com/dictionary/loophole (last visited June 29, 2020 ) (defining "loophole" secondarily as, among other things, "a small opening through which small arms may be fired" and noting this definition as the "first known use" of the term, in 1591); *Loop-hole*, Oxford English Dictionary, https://www.oed.com/view/Entry/110180 (last visited June 29, 2020).

[4] The Straight Dope, *supra* note 3.

[5] *See id.*

2

Defendant-Appellant Carnival Corporation when she bought a ticket for a Carnival cruise. The forum-selection clause requires all litigation to proceed in federal court if federal jurisdiction lies for the claim. DeRoy, who injured her foot on a rug while onboard the Carnival *Valor*, simultaneously sued Carnival in both state and federal court. In her federal suit—this case—she attempted to plead her case to avoid invoking federal jurisdiction, even though federal jurisdiction could exist over a claim seeking damages for the injuries DeRoy allegedly suffered onboard the *Valor*. Then DeRoy sought for the district court to dismiss this federal case for lack of jurisdiction, so she could permissibly proceed with the state suit under the forum-selection clause.

It was a creative effort. But DeRoy's proposed loophole does not exist, so she cannot escape the forum-selection clause's ironclad consequences. Under the forum-selection clause's plain language, when jurisdiction for a claim could lie in federal district court, federal court is the *only* option for a plaintiff. Here, DeRoy's claim for negligence at sea falls well within the walls of the federal court's admiralty jurisdiction. Even without explicitly invoking admiralty jurisdiction—and in fact intentionally attempting to plead around it—DeRoy's complaint is subject to Federal Rule of Civil Procedure 9(h)'s provision rendering her claim an admiralty or maritime claim. Her claim is therefore subject to the forum-selection clause's federal-court-forum fortress.

3

For these reasons, the district court erred in dismissing the action for lack of subject-matter jurisdiction. We therefore reverse and remand for further proceedings.

## I. FACTUAL BACKGROUND

For purposes of reviewing a district court's dismissal for lack of subject-matter jurisdiction, we take the facts as the plaintiff has alleged them, unless the district court has made a contrary finding. *Giardiello v. Balboa Ins. Co.*, 837 F.2d 1566, 1568 n.1 (11th Cir. 1988).

Here, DeRoy asserted that in October 2016, she was a cruise passenger on the Carnival *Valor* ship. During her cruise, DeRoy tripped on a dip in the carpeting in one of the *Valor*'s inside hallways. As a result of her fall, DeRoy broke her right foot and suffered other damages.

On February 20, 2018, DeRoy simultaneously filed two complaints against Carnival Corporation: one in the United States District Court for the Southern District of Florida and one in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida.[6] Each complaint contains a single negligence claim against Carnival.

DeRoy's ticket contract with Carnival contained a forum-selection clause that

---

[6] The record reflects that the state-court case is essentially on hold pending the outcome of this appeal.

required her to bring any claim in the United States District Court for the Southern District of Florida if it was jurisdictionally possible to do so:

> [I]t is agreed by and between the Guest and Carnival that all disputes and matters whatsoever arising under, in connection with or incident to this Contract or the Guest's cruise, including travel to and from the vessel, shall be litigated, if at all, before the United States District Court for the Southern District of Florida in Miami, or as to those lawsuits to which the Federal Courts of the United States lack subject matter jurisdiction, before a court located in Miami-Dade County, Florida, U.S.A. to the exclusion of the Courts of any other county, state or country.

In accordance with this provision, as we have noted, DeRoy filed the suit pending here.

Yet DeRoy devoted the majority of her complaint to attempting to establish that the district court lacked subject-matter jurisdiction—whether diversity, federal-question, or admiralty jurisdiction—to adjudicate her claims. In furtherance of this tactic, DeRoy noted that both she and Carnival were citizens of Florida, so no diversity jurisdiction existed. She next pointed out that since she brought a negligence claim only, federal-question jurisdiction was lacking. And then she asserted that she had elected to bring her *in personam* negligence action *at law*—not in admiralty. So, DeRoy concluded, admiralty jurisdiction did not exist, since admiralty jurisdiction does not extend to *in personam* claims brought *at law*.

For these reasons, DeRoy contended, the federal district court lacked subject-matter jurisdiction and was required to dismiss her suit. Indeed, DeRoy invited the

district court to "dismiss this case sua sponte because it lacks <u>subject matter jurisdiction</u> over the claims in this <u>lawsuit</u>."  And the primary relief she sought in her negligence claim consisted of "[d]ismissal of this case for lack of subject matter jurisdiction," with damages as only an alternative request.[7]

Carnival responded with a motion to dismiss, or, in the alternative, for a more definite statement.  In its motion, Carnival asserted that DeRoy undoubtedly could have invoked admiralty jurisdiction, since 28 U.S.C. § 1333 provides that "[t]he district courts have original jurisdiction, exclusive of the courts of the States," over "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are entitled."[8]  And it noted that, to the extent the saving-to-suitors clause of § 1333 guaranteed DeRoy the right to a jury trial under the Florida constitution, Carnival would not object to a jury trial as DeRoy requested

---

[7] Certainly, pleading in the alternative is permissible in federal court.  *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1273 (11th Cir. 2009) ("Rule 8(d) of the Federal Rules of Civil Procedure expressly permits the pleading of both alternative and inconsistent claims.").  And "[t]he pleading of alternative jurisdictional bases is a common practice."  *State Establishment for Agr. Prod. Trading v. M/V Wesermunde*, 770 F.2d 987, 991 n.3 (11th Cir. 1985).  Pleading a lack of jurisdiction as an alternative to her affirmative claim for negligence, while contradictory, is not fatal to DeRoy's complaint.

[8] We have referred to this latter provision of 28 U.S.C. § 1333 interchangeably as the "saving to suitors" clause and the "savings to suitors" clause.  *See, e.g.*, *Beiswenger Enters. Corp. v. Carletta*, 86 F.3d 1032, 1037 (11th Cir. 1996) ("saving to suitors" clause); *Murphy v. Fla. Keys Elec. Co-op. Ass'n, Inc.*, 329 F.3d 1311, 1319 (11th Cir. 2003) ("savings to suitors" clause).  The Supreme Court has shown a preference for utilizing the singular moniker.  *See Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 443 (2001) ("saving to suitors" clause).  For consistency, in this opinion, we refer to the provision as the "saving-to-suitors clause."

in her complaint.[9]

In her response to Carnival's motion, DeRoy clarified that she was not challenging the enforceability of the forum-selection clause, nor was she claiming that the saving-to-suitors clause in § 1333 gave her an inalienable right to litigate in state court, nor was she arguing that she would be deprived of her right to a jury trial under the Florida constitution.  Rather, DeRoy claimed, she was simply exploiting a hole in Carnival's contract that no one had previously thought of:  since, in DeRoy's view, the forum-selection clause allowed lawsuits where the federal courts had no jurisdiction to proceed in state court, DeRoy pleaded her case in a way intended to evade the federal district court's jurisdiction—specifically, by refusing to *invoke* admiralty jurisdiction.

The district court found DeRoy's position convincing and entered an order dismissing the complaint on May 22, 2018.  In reaching this conclusion, the district court determined that the saving-to-suitors clause in § 1333 allowed DeRoy to evade the court's admiralty jurisdiction.  In the district court's view, DeRoy, as the master of her own complaint, had deliberately avoided invoking admiralty jurisdiction.  It did not matter, the district court said, that DeRoy *could* have brought her claim in admiralty because she affirmatively brought her claim at law.  As a result, the district

---

[9] While admiralty cases do not guarantee the right to a jury trial, Federal Rule of Civil Procedure 39 permits trying such an action by jury with the parties' consent.  Fed. R. Civ. P. 38, 39.

7

court determined, it lacked subject-matter jurisdiction over DeRoy's claim as she pleaded it. And the forum-selection clause did not remedy the jurisdictional problem, the district court reasoned, because subject-matter jurisdiction cannot be created through consent. Nevertheless, the district court recognized that *had* DeRoy brought her claim in admiralty, the court would have enjoyed subject-matter jurisdiction.

Carnival now appeals.

## II. STANDARD OF REVIEW

We review *de novo* the grant of a motion to dismiss for lack of subject-matter jurisdiction. *Tundidor v. Miami-Dade Cty.*, 831 F.3d 1328, 1331 (11th Cir. 2016). In reviewing a facial challenge to a complaint, we consider only the allegations in the complaint, accepting them as true for this purpose. *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). Finally, we review *de novo* the interpretation of a contract. *Grange Mut. Cas. Co. v. Woodard*, 861 F.3d 1224, 1230 (11th Cir. 2017).

## III. DISCUSSION

This case comes before us in a peculiar procedural posture, with DeRoy's tacit invocation of federal jurisdiction—by filing her complaint in the district court—coupled with DeRoy's explicit disavowal of federal jurisdiction in her allegations

8

and claim for relief.[10]  But regardless of what a complaint may say about a court's jurisdiction to entertain it, as we explain below, we look beyond the labels to the underlying facts of the complaint to evaluate jurisdiction.[11]

Here, the complaint alleges a simple personal-injury claim by a cruise-ship passenger who broke her foot while onboard Carnival's *Valor*.  In dealing with claims like this, our precedent establishes four key principles that we must apply: (1) this type of claim falls comfortably within the admiralty jurisdiction of the district court; (2) a plaintiff need not expressly invoke admiralty jurisdiction for a

---

[10] After the district court entered its order dismissing DeRoy's complaint, at least two other plaintiffs followed in her footsteps by filing their own complaints seeking immediate dismissal for want of jurisdiction.  *See Diaz v. BPCL Mgmt.*, No. 18-cv-61379-BB (S.D. Fla. Jun. 19, 2018); *Siliakus v. Carnival Corp.*, No. 18-cv-25137-UU (Dec. 6, 2018).

[11] Carnival invites us to analyze the jurisdiction issue by analogizing to the artful-pleading doctrine.  We decline to do so.  That doctrine pertains to the right of a defendant to remove a cause of action over which federal subject-matter jurisdiction exists, despite the "artful pleading" or labels utilized by a plaintiff in the state court pleadings.  *See Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1064 (11th Cir. 2010); *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 766 (11th Cir. 2010).  According to the artful-pleading doctrine, a plaintiff who files suit in state court may not defeat removal simply by "omitting to plead necessary federal questions."  *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 22 (1983)).  "If a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint."  *Id.*  While the artful-pleading doctrine shows that sometimes courts exercise jurisdiction over the protest of the plaintiff, the doctrine is not a perfect analogy.  Indeed, some have argued that the doctrine is limited to cases where "federal law completely preempts a plaintiff's state-law claim."  *Id.*; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 397 n.11 (1987) (explaining that while removal courts have occasionally sought to determine whether the real nature of a claim is federal, regardless of a plaintiff's characterization, most courts "correctly confine this practice to areas of the law pre-empted by federal substantive law" (citation and quotation marks omitted)).  Here, we need not (and do not) consider the artful-pleading doctrine since it is clear federal jurisdiction exists, regardless.  *See* 14C Fed. Prac. & Proc. Juris. § 3722.1 (Rev. 4th ed.) ("Unfortunately, the artful-pleading doctrine lacks precise definition and has bred considerable confusion.").

9

district court to be able to exercise it where it exists; (3) in cases such as the one here, the saving-to-suitors clause does not operate as a get-out-of-federal-court escape; and (4) federal forum-selection clauses are enforceable. When we apply these principles here, what DeRoy presents as a Gordian jurisdictional knot[12] turns out to require just a straightforward application of our existing precedent to gently untangle its strings.

## A. Subject-Matter Jurisdiction

Federal courts have an obligation to examine *sua sponte* their own jurisdiction over a case, notwithstanding the contentions of the parties. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). That is so because subject-matter jurisdiction underlies a court's power to hear a case. *United States v. Cotton*, 535 U.S. 625, 630 (2002). And for that same reason, subject-matter jurisdiction can never be forfeited or waived. *Id.*

The plaintiff bears the burden of affirmatively asserting facts that show the

---

[12] The term "Gordian knot," which refers to a very difficult or unsolvable problem, finds its origins in a legend about Alexander the Great. Evan Andrews, *What Was the Gordian Knot?*, HISTORY (last updated Aug. 29, 2018), https://www.history.com/news/what-was-the-gordian-knot. According to the story, in 333 B.C.E., Alexander the Great entered the Phrygian capital of Gordium in what is now Turkey. *Id.* When he arrived, he found an ancient wagon with its yoke tied with "several knots all so tightly entangled that it was impossible to see how they were fastened." *Id.* (internal quotation marks omitted). An oracle had announced that whoever could untangle the knots was destined to become the ruler of all of Asia. *Id.* After Alexander the Great tried to manually untie it for some time, according to one version of the legend, he cut the knot in half with a single stroke of his sword, announcing that it made no difference how the knot was untied. *Id.*

existence of jurisdiction and including "a short and plain statement of the grounds upon which the court's jurisdiction depends." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994); Fed. R. Civ. P. 8(a). But even when the parties disclaim or fail to present requirements that go to the existence of subject-matter jurisdiction, courts must *sua sponte* consider such issues. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). And it is the facts and substance of the claims alleged, not the jurisdictional labels attached, that ultimately determine whether a court can hear a claim. *See Taylor*, 30 F.3d at 1367 (plaintiff must allege *facts* demonstrating jurisdiction); *see also In re Carter*, 618 F.2d 1093, 1101 (5th Cir. 1980)[13] (explaining that, in the context of examining a removed case, "[t]he reviewing court looks to the substance of the complaint, not the labels used in it").

Once the court establishes that jurisdiction exists, it has a duty to exercise that jurisdiction. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) ("[F]ederal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress."); *Jackson-Platts v. Gen. Elec. Capital Corp.*, 727 F.3d 1127, 1143 (11th Cir. 2013).

---

[13] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (holding that all decisions of the "old Fifth" Circuit handed down prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit).

### 1. Admiralty jurisdiction covers personal-injury claims like DeRoy's that occur onboard cruise ships at sea

The Constitution provides that the federal judicial power "shall extend . . . to all Cases of admiralty and maritime Jurisdiction." U. S. Const., Art. III, § 2, cl. 1. Under 28 U.S.C. § 1333, district courts enjoy "original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." Citing this provision, we have held that when cruise-ship passengers bring personal-injury claims for injuries that occurred at sea, those claims fall squarely within the admiralty jurisdiction of the district courts. *Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1365 (11th Cir. 2018).

As we have explained, to fall within admiralty jurisdiction, a tort claim must satisfy two criteria: (1) the incident must have taken place on navigable water or the injury must have been caused by a vessel on navigable water; and (2) the incident must have been "connected with maritime activity." *Id.* An incident qualifies as "connected with maritime activity" if, when we evaluate "the general features of the type of incident involved," we determine that that variety of occurrence has "a potentially disruptive impact on maritime commerce" and that "the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id.* (quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995) (internal quotation marks omitted)).

12

DeRoy's negligence claim here meets both of these criteria. First, the incident precipitating DeRoy's claim occurred while the *Valor* was traveling at sea. Second, unchecked personal injuries allegedly resulting from a cruise-ship operator's negligence have the potential to disrupt maritime commerce, and DeRoy suffered her injury while participating as a passenger on a cruise, which is a traditional maritime activity. *See id.* ("Personal-injury claims by cruise ship passengers, complaining of injuries suffered at sea, are within the admiralty jurisdiction of the district courts.").

### 2. DeRoy's failure to expressly allege admiralty jurisdiction here does not mean that admiralty jurisdiction ceases to exist

Sometimes, in addition to admiralty, a court enjoys another basis for subject-matter jurisdiction—say, diversity jurisdiction. In those cases, Rule 9(h) of the Federal Rules of Civil Procedure allows a party to elect to proceed at law via the other jurisdictional basis or to proceed through admiralty. Fed. R. Civ. P. 9(h)(1) ("If a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim[.]"). And if a party has two or more viable bases for jurisdiction, one of which is admiralty, then the party's failure to designate her claim as arising in admiralty means that the case will instead proceed at law. *Murphy v. Fla. Keys Elec. Co-op. Ass'n, Inc.*, 329 F.3d 1311, 1319 (11th Cir. 2003) ("If a claim has multiple jurisdictional bases, one of which is

13

admiralty, . . . [f]ailure to identify a claim as an admiralty or maritime claim in these circumstances means that it is not one.").

Crucially, though, Rule 9(h) also provides that "[a] claim cognizable *only* in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, *whether or not so designated*." Fed. R. Civ. P. 9(h)(1) (emphasis added). Although Rule 9(h) allows a plaintiff in a maritime case to choose whether to proceed at law or in admiralty, that choice is available only if there is a choice to be made—that is, if the plaintiff has a separate basis for subject-matter jurisdiction other than admiralty. But when admiralty is the only basis for jurisdiction, then admiralty jurisdiction applies, regardless of how the plaintiff designates her case.

*Caron* presents an example of a case where a claim proceeded in admiralty despite the plaintiff's failure to elect admiralty jurisdiction under Federal Rule of Civil Procedure 9(h) as his primary basis for jurisdiction. There, Caron, the plaintiff, impaired after drinking alcohol, fell down an escape hatch on a cruise ship. 910 F.3d at 1362. He sued the cruise line for serving him too much alcohol. *Id.* In his complaint, Caron asserted both diversity of citizenship and admiralty jurisdiction. *Id.* at 1363. On appeal, we addressed whether the district court had subject-matter jurisdiction of Caron's claim. Caron argued that alienage-diversity jurisdiction existed; as a backup, though, he also asserted that he had sufficiently invoked admiralty jurisdiction, notwithstanding his failure to officially designate admiralty

14

under Rule 9(h). *See id.* at 1364–65 & n.4.

We ruled that though alienage-diversity jurisdiction was lacking over Caron's case, we did have admiralty jurisdiction, as "[p]ersonal-injury claims by cruise ship passengers, complaining of injuries suffered at sea, are within the admiralty jurisdiction of the district courts." *Id.* at 1365. We clarified that "[s]ince admiralty was the only proper source of jurisdiction, Caron was not required to elect it under Federal Rule of Civil Procedure 9(h)" to proceed on that basis. *Id.* at 1365 n.4. Rather, we explained, we enjoyed jurisdiction because "Caron alleged sufficient *facts* to support the District Court's exercise of admiralty jurisdiction." *Id.* at 1366 (emphasis added).

Like the claim at issue in *Caron*, DeRoy's negligence claim lies squarely within federal-court admiralty jurisdiction, since, as we have explained, the facts and tort claim she alleged satisfy admiralty jurisdiction. So despite DeRoy's attempt to avoid invoking admiralty jurisdiction, the district court enjoyed it nonetheless.

It makes no difference that in *Caron*, Caron affirmatively invoked admiralty jurisdiction in the alternative, and in DeRoy's case, DeRoy actively attempted to disclaim admiralty jurisdiction throughout her complaint. Admiralty jurisdiction turns on the *facts* and substance of the claims alleged in the complaint. And here, the complaint alleges sufficient facts demonstrating that the district court had admiralty subject-matter jurisdiction. *Cotton*, 535 U.S. at 630; *Taylor*, 30 F.3d at

15

1367; *Gonzalez*, 565 U.S. at 141.  Since admiralty jurisdiction is the only basis for federal jurisdiction under the facts and substance of DeRoy's complaint, the district court enjoyed admiralty jurisdiction in this case, whether DeRoy invoked it or not. Fed. R. Civ. P. 9(h).

### 3.  The saving-to-suitors clause does not nullify admiralty jurisdiction over this action

Although the district court was aware that admiralty jurisdiction could lie for a claim like DeRoy's, it nonetheless concluded that under § 1333's saving-to-suitors clause, DeRoy could and did choose to avoid admiralty jurisdiction.  That was error.

As we have noted, § 1333 vests district courts with original jurisdiction over civil admiralty or maritime disputes, but the statute "saves to suitors"—meaning plaintiffs—"all other remedies to which they are otherwise entitled."  28 U.S.C. § 1333(1).  While the Supreme Court has noted that the drafters' intention behind what is now § 1333 "is not entirely clear and has been the subject of some debate," it has nonetheless concluded that "the saving to suitors clause preserves remedies and the concurrent jurisdiction of state courts over some admiralty and maritime claims."[14]  *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 444, 445 (2001).

---

[14] The saving-to-suitors clause does not provide concurrent state and federal jurisdiction over all admiralty claims.  *In rem* proceedings, "where a vessel or thing is itself treated as the offender and made the defendant by name or description in order to enforce a lien," fall exclusively within the federal domain.  *Madruga v. Superior Court of State of Cal. in & for San Diego Cty.*, 346 U.S. 556, 560 (1954).

One remedy the saving-to-suitors clause safeguards is the right to a jury trial.[15] *Id.* at 454–55 ("Trial by jury is an obvious, but not exclusive, example of the remedies available to suitors."). Unlike with federal cases brought at law, no Seventh Amendment right to a jury trial applies in admiralty cases. *Fitzgerald v. U.S. Lines Co.*, 374 U.S. 16, 20 (1963). So we have said that the saving-to-suitors clause "embodies a presumption in favor of jury trial and common law remedies in the forum of the claimant's choice." *Beiswenger Enters. Corp. v. Carletta*, 86 F.3d 1032, 1037 (11th Cir. 1996).

For that reason, we have concluded that the saving-to-suitors clause generally provides a plaintiff in a maritime case alleging an *in personam* claim three options: "(1) the plaintiff may file suit in federal court under admiralty jurisdiction . . . ; (2) the plaintiff may file suit in federal court under diversity jurisdiction; or (3) the plaintiff may file suit in state court." *St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.*, 561 F.3d 1181, 1187 n.13 (11th Cir. 2009); *Diesel "Repower", Inc. v. Islander Invs. Ltd.*, 271 F.3d 1318, 1322 (11th Cir. 2001) ("The saving to suitors clause allows an *in personam* action, whether the action is instituted in a state court or in a federal court under diversity jurisdiction or in a federal court under maritime jurisdiction.").

---

[15] In the district court, DeRoy disclaimed any reliance on an argument that the saving-to-suitors clause gave her an inalienable right to litigate in state court or that she otherwise would be deprived of her right to a jury trial under the Florida constitution by proceeding in federal court.

17

Nothing about the saving-to-suitors clause does anything to alter the fact that the district court enjoyed admiralty jurisdiction over DeRoy's claim, based on the facts she alleged in her complaint and given that DeRoy herself filed this action in federal court. Nor does the saving-to-suitors clause authorize a plaintiff who files in federal court to escape or sabotage existing admiralty jurisdiction by simply labeling her claims "at law," rather than "in admiralty." The saving-to-suitors clause of 28 U.S.C. § 1333 likewise does not relieve courts of their burden to examine their own jurisdiction. And when a plaintiff herself files a suit in federal court, the saving-to-suitors clause does not modify Rule 9(h) to permit a party to "elect" to proceed at law in federal court instead of in admiralty when admiralty provides the only basis for subject-matter jurisdiction—at least not when the defendant agrees to a jury trial.

Rather, the saving-to-suitors clause allowed DeRoy to choose to file her claim exclusively in state court. Because DeRoy did not, though, and because she voluntarily filed in federal court and alleged sufficient facts to satisfy admiralty jurisdiction, DeRoy's case could not be dismissed from federal district court for lack of subject-matter jurisdiction. And the saving-to-suitors clause is not even arguably relevant to the analysis, since DeRoy filed in federal court and Carnival has agreed to a jury trial.

We also reject the notion that the saving-to-suitors clause's impact on removal jurisdiction has any relevance here. True, if the plaintiff elects to file a maritime

18

case in state court, that case may not be removed to federal court solely on the basis of admiralty jurisdiction. *Armstrong v. Ala. Power Co.*, 667 F.2d 1385, 1388 (11th Cir. 1982) ("[A] federal district court should not accept the removal of a saving clause case solely because of its general maritime nature: the maritime nature simply does not provide a ground for federal jurisdiction.").[16]  But this is not a removal action.  And neither the fact that the saving-to-suitors clause gives state and federal courts concurrent jurisdiction over admiralty *in personam* cases nor the fact that a defendant may not remove a saving-to-suitors claim solely on the basis of admiralty jurisdiction affects DeRoy's affirmative act of filing her own suit in federal court. Because DeRoy did so and the facts she alleged nonetheless established admiralty jurisdiction, the district court had admiralty jurisdiction over DeRoy's maritime negligence claim, regardless of the saving-to-suitors clause.

### B.  The forum-selection clause here required DeRoy to file in the U.S. District Court in Miami any claims over which federal jurisdiction could exist if properly pleaded

As we have discussed, the district court dismissed DeRoy's maritime negligence claim for lack of subject-matter jurisdiction, even though it recognized that admiralty jurisdiction could exist over DeRoy's claim.  We have already

---

[16] We decided *Armstrong* under a version of the removal statute, 28 U.S.C. § 1441, that has since been amended.  Section 1441(b) was amended as part of the Federal Courts Jurisdiction and Venue Clarification Act of 2011, § 102, Pub. L. No. 112–63, 125 Stat. 758.  We have yet to consider whether *Amstrong*'s holding withstands these amendments, nor need we do so now, as DeRoy's action is not before us as a result of removal.

explained why that was error from a jurisdictional point of view. But it was also error for another reason: the forum-selection clause did not allow DeRoy to avoid federal jurisdiction for any claims she had against Carnival that could be brought in federal court.

While the saving-to-suitors clause gives state and federal courts concurrent jurisdiction over admiralty *in personam* cases such as this one, parties are free to contract for a federal forum for potential claims, provided, of course, that the federal forum has independent subject-matter jurisdiction. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 11(1972); *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). DeRoy has expressly disclaimed challenging the enforceability of the clause, so we must apply the clause here.

In interpreting a forum-selection clause's language, we turn to general contract principles to apply the plain meaning of the contract's language. *Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1330 (11th Cir. 2011). We consider the contract as a whole, the parties, and the agreement's purpose to best determine the intent of the parties. *Id.* Where contract principles do not reveal a particular meaning of a clause in question and more than one reasonable construction is plausible, we choose the construction that favors the non-drafting party. *Id.*

We begin our analysis of the forum-selection clause here by considering whether it is permissive or mandatory. As its name suggests, a permissive clause

20

permits litigation in a jurisdiction other than the one designated. *Id.* But a mandatory clause requires the party to litigate exclusively within the designated forum. *Id.*

Here, as we have noted, the forum-selection clause provides, in relevant part, that "all disputes . . . shall be litigated, if at all, before the United States District Court for the Southern District of Florida in Miami, or as to those lawsuits to which the Federal Courts . . . lack subject matter jurisdiction, before a court located in Miami-Dade County, Florida." The plain meaning of the forum-selection clause at issue here reflects that the clause is a mandatory one that requires a litigant to sue in Miami federal district court when her claims are amenable to federal jurisdiction.

Three aspects of the first half of the clause—"all disputes . . . shall be litigated, if at all, before the United States District Court for the Southern District of Florida in Miami"—stand out. First, the clause specifies that it pertains to "all" disputes arising from the cruise. We have recognized that "all" means "every" or "any." *See United States v. Castro*, 837 F.2d 441, 445 (11th Cir. 1988) (concluding "any" means "every" or "all"). So the forum-selection clause applies to every dispute that arises from the cruise. Second, the clause employs the term "shall." We have recognized that "the use of the term 'shall' is one of requirement." *See Slater*, 634 F.3d at 1330. So this word requires any litigation to occur in the United States District Court for the Southern District of Florida. And third, the clause uses the phrase "if at all" in describing litigation. In the context of the forum-selection clause at issue, this

21

language means that if a dispute can be litigated in the Southern District of Florida, that is the only place it can be litigated. If such a dispute is not litigated in the Southern District of Florida, it is not to be litigated "at all."

The second half of the forum-selection clause—"or as to those lawsuits to which the Federal Courts . . . lack subject matter jurisdiction, before a court located in Miami-Dade County, Florida"—does nothing to change the fact that all disputes arising from the cruise, that can be litigated in the Southern District of Florida, must be litigated there or not litigated at all. Rather, the second half of the clause permits a plaintiff to file in state court only when the federal court does not have subject-matter jurisdiction over the claim. It is a failsafe that guards against the possibility that a plaintiff with a potentially viable claim will not be able to have her claim heard because federal jurisdiction is lacking over the facts of the claim.

Contrary to DeRoy's argument, the "or" language is not an invitation for litigants to forum shop. Litigants who wish to be in state court cannot simply refuse to set forth the correct federal jurisdictional ground. DeRoy's construction would render the "shall" language meaningless and effectively nullify the forum-selection clause: a plaintiff could just "decline" to invoke diversity or admiralty jurisdiction to get into state court. We do not construe contracts that way. Rather, when, as here, we may reasonably construe a contract to give every provision meaning, we do so. *Fla. Polk Cty. v. Prison Health Servs., Inc.*, 170 F.3d 1081, 1084 (11th Cir. 1999).

22

We further note that the Supreme Court has concluded that cruise lines have a special interest in clarifying where they can be sued, since their business involves transporting passengers through many jurisdictions. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991). Clarity in the forum for litigation spares parties time and expense, and it allows the cruise line to pass the savings to passengers. *Id.* at 594. We will not effectively repudiate a valid forum-selection clause by allowing a plaintiff to circumvent it by refusing to acknowledge the correct basis for federal jurisdiction over her case.

Indeed, DeRoy has conceded that she concurrently filed her complaint in federal court because, in the absence of a binding federal holding that the district court did not enjoy jurisdiction over her claim, binding case law in state court would have required the state court to dismiss her claim in accordance with the forum-selection clause. Courts in the jurisdiction where DeRoy filed her state-court complaint, Florida's Third District Court of Appeal, have found enforceable the very forum-selection clause at issue here, requiring other lawsuits to proceed in federal court where jurisdiction exists. *M.Z. v. Carnival Corp.*, 239 So. 3d 756, 758 (Fla. 3d DCA 2018), *reh'g denied* (Mar. 27, 2018) (enforcing the same forum-selection clause at issue here, because there was no evidence of overreaching or bad faith, or that "plaintiffs w[ould] be mistreated or short-changed by the judges of the United States District Court for the Southern District of Florida, or that federal judges

23

w[ould] routinely deny cruise ship passengers, such as these plaintiffs, jury trials if requested"); *Leslie v. Carnival Corp.*, 22 So. 3d 561, 562–63 (Fla. 3d DCA 2008), *upheld on reh'g en banc,* 22 So. 3d 567 (Fla. 3d DCA 2009) (enforcing the same forum-selection clause at issue here against the allegation that the clause deprives Florida citizens of their right to a jury trial under the saving-to-suitors clause); *Carnival Corp. v. Garcia*, 237 So. 3d 1110, 1114 (Fla. 3d DCA 2018) ("[O]nly in the absence of admiralty jurisdiction, will proper venue lie in a state court in Miami–Dade County.").

Put simply, DeRoy did not discover a "loophole" in the forum-selection clause, so she cannot escape its consequences. Rather, because her claim is capable of being pleaded to satisfy federal jurisdiction (and was, in fact, pleaded that way), the claim must proceed, if at all, in federal court.

## IV. CONCLUSION

In short, the forum-selection clause does not contain the loophole DeRoy urges. To the contrary, it serves as a moat around the federal-court forum, ensuring that claims where federal jurisdiction could lie, if litigated at all, stay in federal court.

For the reasons we have explained, the district court enjoyed admiralty subject-matter jurisdiction over DeRoy's complaint. Therefore, we must reverse and vacate the order of dismissal for lack of subject-matter jurisdiction and remand for further proceedings consistent with this opinion.

24

**REVERSED, VACATED, and REMANDED.**