[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11102

_____

D.C. Docket No. 0:19-cv-61655-RKA


FREEDOM UNLIMITED,
as Owner of the M/Y FREEDOM, a 2000 230 Benetti motor yacht
(IMO 8975067) in a Cause of Exoneration from or Limitation of Liability,

Petitioner-Appellant,

versus

TAYLOR LANE YACHT AND SHIP, LLC,

Respondent-Claimant,

JOSHUA BONN,

Claimant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 17, 2021)

Before MARTIN, GRANT, and BRASHER, Circuit Judges.

GRANT, Circuit Judge:

The Limitation of Liability Act ensures that, for most maritime claims, shipowners will not be liable for more than the value of their ships and pending freight.  It also ensures that shipowners will be able to litigate this liability limitation in federal court.  That meant that, when Bonn sued for the injuries he received on Freedom Unlimited's ship, the only way he could pursue his action in a state forum was by making stipulations designed to preserve Freedom Unlimited's rights under the Act.  The district court found Bonn's stipulations to be adequate, and allowed him to proceed in state court.  We affirm.

I.

Freedom Unlimited owns the *M/Y Freedom*, a 230-foot motor yacht.  The *Freedom* hired Taylor Lane Yacht and Ship LLC for maintenance and repair work every year from 2014 to 2017, signing a contract for the job each time.  Those contracts always contained the same indemnification clause, which provided that Freedom Unlimited "shall defend and indemnify [Taylor Lane] against all claims, actions, liabilities and damages for injury" arising from the use of Taylor Lane's facilities, unless caused by gross negligence.[1]  When the *Freedom* called at Taylor Lane in December 2018, the contract contained the same clause.  But there was one difference: for unknown reasons, neither Taylor Lane nor Freedom Unlimited signed it.

---

[1] The full language of the indemnification clause as relevant is:  "Owner shall defend and indemnify TLYS, its management, unit owners, agents and directors against all claims, actions, liabilities and damages for injury to persons (including death) or damage to property arising directly or indirectly out of the use of TLYS's slips or marina facilities by the Owner, its guests, family, employees, agents, contractors and subcontractors, unless caused by the gross negligence or intentional acts of TLYS."

2

That year, the *Freedom* docked at Taylor Lane's berth to receive a new paint job. The handrails on the deck needed to be removed first, and that task required a 30-ton crane owned and operated by Taylor Lane. The plan was for *Freedom* crewmembers to attach sections of the handrails to the crane, which would then lift the handrails off and onto the dock. One of the crewmembers tasked with attaching the handrails to the crane was Joshua Bonn, a deckhand hired less than a month earlier.

Tragedy struck. The crane's cable broke, sending the ball at its tip crashing down onto the handrails. The impact caused the handrails to "explode" and fly into Bonn's right leg, pinning him to the deck and wounding his ankle and foot. The crash also caused Bonn to lose consciousness when the force of the impact made him fall and hit his head. Though he was rushed to the nearest hospital, the damage had been done—Bonn's right foot had to be amputated above the ankle.

Bonn filed an action against Freedom Unlimited and Taylor Lane in state court to recover for his injuries. Federal law is precise about who has jurisdiction over maritime suits: under 28 U.S.C. § 1333, the "district courts shall have original jurisdiction, exclusive of the courts of the States," over "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." That last clause is known—unsurprisingly— as the "saving to suitors" clause, and it maintains concurrent jurisdiction in state and federal court over certain maritime claims. *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 445 (2001). More specifically, it means that "a plaintiff in a maritime case alleging an *in personam* claim" generally has the option to "file suit

3

in state court." *DeRoy v. Carnival Corp.*, 963 F.3d 1302, 1314 (11th Cir. 2020). As was his right under that clause, Bonn pursued a remedy for his injuries in state court.

In response, Freedom Unlimited exercised a right of its own—the right to seek limitation of damages under the Limitation of Liability Act, 46 U.S.C. § 30505. Under that statute, a shipowner's liability is limited to the value of the vessel and its pending freight, and damages are distributed between claimants in an equitable proceeding known as a concursus. So Freedom Unlimited filed a complaint for limitation of liability in federal district court, and stipulated the *Freedom*'s value to be $29,893,000. The district court approved that as a temporary stipulation, and stayed and restrained proceedings in all other courts to make sure that no judgment would exceed the stipulated value.

Bonn then filed a claim in the district court, alleging Jones Act negligence and unseaworthiness claims against Freedom Unlimited. Taylor Lane also filed a claim against Freedom Unlimited in the district court proceeding, bringing two counts. Count I claimed that Taylor Lane was entitled to contribution from Freedom Unlimited should the repair company be found liable to Bonn. Count II claimed that the unsigned indemnification clause was an implied contract that entitled Taylor Lane to indemnity from Freedom Unlimited, including for attorney's fees. Bonn and Taylor Lane were the only two claimants to take part in the proceeding.

Bonn still preferred to litigate his case in state court, so he filed a motion to lift the injunction. To permit the state court action to proceed while still preserving

4

Freedom Unlimited's rights under the Limitation Act, Bonn made six stipulations. Two of these are most important for our purposes. First, Bonn stipulated that he would wait until the Limitation Act limits were decided before seeking to enforce any judgments; specifically he would not "seek to enforce any judgment rendered in any court, whether against the Petitioner or another person or entity that would be entitled to seek indemnity or contribution from the Petitioner, by way of cross-claim or otherwise, that would expose the Petitioner to liability in excess of the to be determined limitation fund, until such time as this Court has adjudicated the Petitioner's right to limit that liability." Second, Bonn stipulated that, once the court decided those limits, he would respect them, not seeking to "enforce any judgment that would require the Petitioner to pay for damages in excess of" the limitation fund.

The magistrate judge thought those stipulations were enough to protect Freedom Unlimited's rights and recommended lifting the injunction on the state proceedings. Freedom Unlimited objected. For one, it argued that the injunction should not be stayed because Taylor Lane did not file similar stipulations for its contribution claim. Freedom Unlimited also argued that Taylor Lane's claims for attorney's fees and costs under its implied contract theory are separate from any liability to Bonn, so Bonn's stipulations could not protect against excess liability in any event.

The district court was unconvinced by Freedom Unlimited's objections. It acknowledged that multiple claimants—Taylor Lane and Bonn—were arrayed against Freedom Unlimited, which meant that the aggregate value of the competing

claims could theoretically exceed the liability limit. Even so, the district court found that Bonn's stipulations cured the multiple-claimants problem, because they provided that Bonn would not enforce judgments against Taylor Lane that would expose Freedom Unlimited to excess liability. The court also found that Taylor Lane's contractual claims, if valid, would arise under a personal contract, meaning that the Limitation Act could not apply to them. As a result, the injunction was lifted, the proceedings in federal court were stayed, and Freedom Unlimited appealed.

## II.

We review a district court's order to "stay a limitation action arising under the Limitation Act and to modify a related injunction for abuse of discretion." *Offshore of the Palm Beaches, Inc. v. Lynch*, 741 F.3d 1251, 1257 (11th Cir. 2014). An error of law is an abuse of discretion. *Id.*

## III.

The Limitation Act generally provides that the shipowner's liability "shall not exceed the value of the vessel and pending freight," at least for certain claims. 46 U.S.C. § 30505(a). Qualifying claims are "those arising from any embezzlement, loss, or destruction of any property, goods, or merchandise shipped or put on board the vessel, any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of the owner." *Id.* § 30505(b). As we have described it, the Act functions by "limiting the physically remote shipowner's vicarious liability

for the negligence of his or her water-borne servants." *Suzuki of Orange Park, Inc. v. Shubert*, 86 F.3d 1060, 1064 (11th Cir. 1996).

In addition to limiting liability, the Act gives federal courts exclusive admiralty jurisdiction to decide whether that limitation applies. *Beiswenger Enters. Corp. v. Carletta*, 86 F.3d 1032, 1036 (11th Cir. 1996). Because of that exclusive jurisdiction, the Act is somewhat in tension with the saving to suitors clause. As the Supreme Court has noted, "[o]ne statute gives suitors the right to a choice of remedies, and the other statute gives vessel owners the right to seek limitation of liability in federal court." *Lewis*, 531 U.S. at 448. In cases where both provisions are at play, "the primary concern is to protect the shipowner's absolute right to claim the Act's liability cap, and to reserve the adjudication of that right in the federal forum." *Beiswenger*, 86 F.3d at 1037 (quotations omitted). As a practical matter, that means that the district court stays all related claims against the shipowner that are pending in any other forum. *Id.* at 1036.

Even so, in some circumstances the district court may stay or dismiss the limitation action, and lift the injunction on proceedings in other courts. *Lewis*, 531 U.S. at 454. For one, if the amount a claimant seeks cannot possibly exceed the value of the ship and freight, a claimant may litigate in another forum. *Lake Tankers Corp. v. Henn*, 354 U.S. 147, 152–53 (1957). Another is called the "single claimant" exception. When there is only one claimant, he may choose the forum by "filing stipulations that protect the shipowner's right to have the admiralty court ultimately adjudicate its claim to limited liability"—for example, by stipulating that the claimant will not seek to enforce any judgment in excess of

7

the liability limitation. *Beiswenger*, 86 F.3d at 1037. And this Circuit has taken that "single claimant" exception a step further—even when there are multiple claimants, appropriate stipulations can give rise to the "functional equivalent" of a single claim situation. *Id.* at 1038, 1040.[2]

The district court below lifted the injunction on the state court proceedings because it concluded that (1) any liability Freedom Unlimited had on Taylor Lane's contractual claims was not incurred "without the privity or knowledge of the owner" as required by 46 U.S.C. § 30505(b), and (2) Bonn's stipulations otherwise ensured that Freedom Unlimited's aggregate liability would not exceed the limit. Freedom Unlimited takes issue with both of those points, but after considering them we agree with the district court.

A.

First up is whether Taylor Lane's contractual claims render Bonn's stipulations insufficient to permit the district court to lift its injunction on the state court proceedings. Freedom Unlimited especially points to Taylor Lane's claim to attorney's fees under the alleged contract.

Bonn's stipulations only provide that he will not seek to enforce a judgment that would require Freedom Unlimited "to pay for damages in excess of the limitation fund." But that does not protect against the litigation costs incurred by Taylor Lane—which could end up being transferred to Freedom Unlimited if the

---

[2] Other circuits have done the same. *See, e.g., In re Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.2d 750, 759–60 (2d Cir. 1988); *Gorman v. Cerasia*, 2 F.3d 519, 525–26 (3d Cir. 1993); *Magnolia Marine Transp. Co., Inc. v. Laplace Towing Corp.*, 964 F.2d 1571, 1576 (5th Cir. 1992); *S & E Shipping Corp. v. Chesapeake & Ohio Ry. Co.*, 678 F.2d 636, 644 (6th Cir. 1982); *Universal Towing Co. v. Barrale*, 595 F.2d 414, 419–20 (8th Cir. 1979).

contractual claim is successful.  So, the argument goes, even with Bonn's stipulations, Freedom Unlimited's liability might exceed the amount in the limitation fund, once Taylor Lane's attorney's fees are taken into account.

True enough, but that only matters if the Limitation Act would apply to the claims under the alleged contract in the first place.  The Act limits only liability incurred "without the privity or knowledge" of the shipowner; it "does not limit liability for the personal acts of the owners done with knowledge."  *Pendleton v. Benner Line*, 246 U.S. 353, 356 (1918).  Put another way, a shipowner remains liable "[f]or his own fault, neglect, *and contracts*."  *Am. Car & Foundry Co. v. Brassert*, 289 U.S. 261, 264 (1933) (emphasis added); *see also Richardson v. Harmon*, 222 U.S. 96, 106 (1911), *abrogated in part by Sisson v. Ruby*, 497 U.S. 358 (1990).

The rule that an owner remains liable for that last category—personal contracts—is not new.  In *Pendleton v. Benner Line*, the Supreme Court found that the Limitation Act did not cover a contract containing a warranty for seaworthiness.  246 U.S. at 357.  There, the Court found that the "contract was between human beings," and that the shipowner "by his own act knowingly made himself a party to an express undertaking for the seaworthiness of the ship."  *Id.* at 356.  The Court held that the statute did not apply to a claim arising out of that contract, because the Limitation Act "does not limit liability for the personal acts of the owner done with knowledge."  *Id.*  This principle makes sense, because "a shipowner should not be able to promise an undertaking or performance that was within his personal control and then turn around and limit liability when his

performance was faulty." 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 15:3 (6th ed. 2020). After all, the Limitation Act is designed to limit the shipowner's liability for matters beyond his personal control; a shipowner controls whether he enters into and complies with a personal contract to indemnify another. *Cf. S & E Shipping Corp. v. Chesapeake & Ohio Ry. Co.*, 678 F.2d 636, 644 n.14 (6th Cir. 1982).

We recently applied the personal contract doctrine in *Orion Marine Construction, Inc. v. Carroll*, 918 F.3d 1323 (11th Cir. 2019). There, Orion Marine Construction entered into a contract—one that contained an indemnification provision—with the Florida Department of Transportation to rebuild a bridge. *Id.* at 1325–26, 1332 n.3. The construction allegedly damaged surrounding properties, and aggrieved homeowners sent claims to the Department, which in turn forwarded the claims to Orion. *Id.* at 1332 & n.3. We rejected the argument that a contractual claim through the indemnification clause could fall under the Limitation Act, because "contracts entered into by vessel owners are personal and not subject to the Act." *Id.* at 1332 n.3. That meant "no claim made by FDOT against Orion pursuant to their contract would be subject to limitation." *Id.*

Our holding in *Orion* covers this case. Taylor Lane seeks indemnity, including attorney's fees, through its alleged implied contract. To establish an implied contract, Taylor Lane would have to show assent between the parties. *Tipper v. Great Lakes Chem. Co.*, 281 So. 2d 10, 13 (Fla. 1973); *see also Sea Byte, Inc. v. Hudson Marine Mgmt. Servs.*, 565 F.3d 1293, 1298 (11th Cir. 2009) (in

10

certain circumstances, courts may apply state law in the absence of an answer to a specific question of maritime law).   And, based on Taylor Lane's complaint, the "party" entering into these contracts was always the shipowner itself, Freedom Unlimited—meaning that, *if* there is an implied contract, Freedom Unlimited personally entered into it.  *See also Cullen Fuel Co. v. W.E. Hedger, Inc.*, 290 U.S. 82, 88 (1933) (implied warranty of seaworthiness falls within the personal contract doctrine).  In short, if Taylor Lane is successful in its claim, Freedom Unlimited— like the shipowner in *Pendleton*—would have "by [its] own act knowingly made [itself] a party" to an indemnity contract.  246 U.S. at 356.  So any claims under it would not be "subject to limitation."  *Orion*, 918 F.3d at 1332 n.3.

Freedom Unlimited nonetheless argues that the personal contract doctrine does not exempt Taylor Lane's contractual claims from limitation.  First, it says that there is no contract at all, and that the district court improperly decided that there was one without a fully developed record.  Second, it contends that to find that the personal contract exception applies, we would also need to find a breach of the contract—another question it says we cannot answer on the current record.

These arguments are unconvincing.  To start, the district court did not find an implied contract.  What it said is that *if* a contract exists, Taylor Lane's claims under the contract would not be subject to limitation.  The point is that if there *is* an implied contract, then the claims fall under the personal contract doctrine and are not subject to limitation.  And if there is *not* an implied contract, then there is no contractual claim at all, let alone a claim subject to limitation.  So we do not

11

decide whether there is or is not an implied contract—either way, Taylor Lane does not have a contract claim subject to the Limitation Act.[3]

Freedom Unlimited's contention that we must find a personal *breach* of a contract to apply the personal contract exception also fails. That idea goes back at least to Judge Learned Hand, who found that when the breach of a contract "was not done, occasioned, or incurred with the [shipowner]'s privity," his liability was limited. *The Soerstad*, 257 F. 130, 131 (S.D.N.Y. 1919) (quotations omitted). This Circuit has not decided whether to adopt that rule. *See Signal Oil & Gas Co. v. The Barge W-701*, 654 F.2d 1164, 1169 (5th Cir. 1981).[4] We need not do so here, either; even if that rule did apply, Taylor Lane's contractual claims would fall within the personal contract doctrine. The indemnity contract would be a promise by Freedom Unlimited to pay for Taylor Lane's liability and legal costs; any breach of that obligation would necessarily have to happen with Freedom Unlimited's "privity." *The Soerstad*, 257 F. at 131; *see also The No. 34*, 25 F.2d 602, 607 (2d Cir. 1928) (default is "personal" where it would "consist[] of a failure to pay"). In any event, in *Orion* we did not have to find any breach of the indemnity contract before holding that no claim subject to limitation could arise from it. 918 F.3d at 1332 n.3. This case is no different.

---

[3] Because Freedom Unlimited failed to raise the issue at the district court, we do not consider its argument that the implied contract would be unenforceable as a matter of law. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). But we do note that even if we agreed with Freedom Unlimited, finding the contract to be unenforceable would just be another way to find that claims under that contract are not subject to limitation.

[4] In *Bonner v. City of Prichard*, this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. *See* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

At bottom, Taylor Lane's contractual claims would have to be brought under the alleged implied indemnity contract. And that sort of contract falls under the personal contract exception. Those claims are not subject to limitation.

B.

With Taylor Lane's contractual claims out of the way, we address Freedom Unlimited's remaining argument that Bonn's stipulations are inadequate. Because of the district court's entry of final default judgment against all non-appearing potential claimants, the only claimant other than Bonn is Taylor Lane. And Taylor Lane's only non-contractual claim is its claim for contribution, so that is the one we consider.

To the extent Freedom Unlimited argues that the "single claimant" exception requires that all the claimants in a limitation action must file stipulations, its argument is foreclosed by our decision in *Beiswenger Enterprises Corp. v. Carletta*, 86 F.3d 1032 (11th Cir. 1996). There, we held that, even though some potential claimants did not enter stipulations, appropriate stipulations from the claimants before the court could ensure that the shipowners would not be liable for more than the limitation fund. *Id.* at 1043. What's more, the stipulations Bonn filed mirror the one in *Beiswenger*: the *Beiswenger* claimants promised to "not seek to enforce any judgment rendered in any state court, whether against the [shipowner] or another person or entity that would be entitled to seek indemnity or contribution from the [shipowner], by way of cross-claim or otherwise, that would expose the [shipowner] to liability in excess of [the limitation fund], until such time as [the district court] has adjudicated the [shipowner's] right to limit that

13

liability." *Id.* And while we expressed concern that the stipulations in *Beiswenger* were limited to *state* court judgments—and withheld our approval in *Beiswenger* for that reason—Bonn's stipulations promise not to enforce *any* judgment procured in any forum beyond the limitation fund. *Id.* at 1045. In short, under *Beiswenger*, this is "the functional equivalent of a single claim case." *Id.* at 1044.

Freedom Unlimited's pushback does not persuade us. It argues that Taylor Lane's claims are not derivative of Bonn's—that is, Freedom Unlimited argues that Taylor Lane might have claims that are not based on Bonn's claims. But we have already dealt with Taylor Lane's contractual claims. And the district court already eliminated the possibility of any new claims when it "exonerated" Freedom Unlimited "from any responsibility, loss, damage, or injury from all claims" except for "claims timely filed by" Taylor Lane and Bonn.[5] The only non-contractual claim that Taylor Lane filed before that order was its claim for contribution. *See also Lynch*, 741 F.3d at 1257 (after the court issues notice to all persons asserting claims, it "may subsequently enter a default against any potential claimants who have not submitted timely filings"). So any remaining claims are either outside the Limitation Act as personal contract claims, or covered by Bonn's stipulations. None of Freedom Unlimited's arguments show that its Limitation Act rights are jeopardized.

---

[5] Freedom Unlimited made these same arguments in its motion below to restore the injunction on state court proceedings and stay the case pending appeal. *In re Freedom Unlimited*, 489 F. Supp. 3d 1328 (S.D. Fla. 2020). In denying that motion, the district court noted that Freedom Unlimited "already won a default judgment against Taylor Lane" for any unraised claim. *Id.* at 1338 n.8. So, the district court held, "in practical terms" Taylor Lane is "forever precluded from making any such claim against" Freedom Unlimited. *Id.*

\*        \*        \*

Because Bonn's stipulations adequately protect Freedom Unlimited's rights under the Limitation Act, the district court's judgment is **AFFIRMED**.